### AMERICAN CHAIN CO., Inc., v. HART-FORD–CONNECTICUT TRUST CO.

Nos. 3360, 3371, 3421.

District Court, D. Connecticut.

July 29, 1931.

. David S. Day, of Bridgeport, Conn., Charles P. Swindler, of Washington, D. C., and Norman King Parsells, of Bridgeport, Conn., for plaintiff.

Frank J. Wideman, Asst. Atty. Gen., Andrew D. Sharpe and James A. Cosgrove, Sp. Assts. to Atty. Gen., all of Washington, D. C., and Robert P. Butler, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., for defendant.

THOMAS, District Judge.

These three separate actions at law, which have been consolidated, were brought against the collector of internal revenue to recover, in each instance, a manufacturer's excise tax assessed against and collected from the plaintiff, upon the sales of Weed tire chains during the period July 1, 1922, to December 31, 1924. The cases are identical as to the pleadings and differ only as to the amounts alleged to be due and the taxable period. The suits are numbered 3360, 3371, and 3421. The claim of the plaintiff is for the award of judgments for $329,250, $172,470.36, and $98,416.41 in each respective suit, and all with interest from the date of each payment.

For the previous history of these three cases, see American Chain Co. v. Eaton (D. C.) 58 F.(2d) 248; Eaton v. American Chain Co. (C. C. A.) 63 F. (2d) 783; American Chain Co. v. Eaton, 291 U. S. 386, at page 406, 54 S. Ct. 443, 451, 78 L. Ed. 859.

The question presented is whether plaintiff is entitled to recover the amount of excise taxes paid on sales by it as manufacturer of Weed tire chains, as parts or accessories of automobile trucks, automobile wagons, other automobiles or motorcycles, except tractors, under section 900 of the Revenue Act of 1921 (42 Stat. 291), and section 600 of the Revenue Act of 1924 (26 USCA §§ 881 note, 882). The plaintiff contends that its product is not an accessory within the statutory meaning. The defendant contends that it is such an accessory, and that in any event plaintiff is not entitled to recover because it did not pay the tax on its own account, but passed it on to its customers, and has not complied with the conditions of section 424 (a) of the Revenue Act of 1928 (26 USCA § 2424), with reference to satisfying the Commissioner of Internal Revenue that plaintiff had not collected the tax from customers, or had reimbursed them, or had filed a bond to secure their reimbursement. The two issues present questions of fact.

Section 900 of the Revenue Act of 1921, applicable to cases Nos. 3360 and 3371, reads:

"Sec. 900. That from and after January 1, 1922, there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold or leased—

"(1) Automobile trucks and automobile wagons (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), 3 per centum;

"(2) Other automobiles and motor cycles (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), except tractors, 5 per centum;

"(3) Tires, inner tubes, parts, or accessories for any of the articles enumerated in subdivision (1) or (2), sold to any person other than a manufacturer or producer of any of the articles enumerated in subdivision (1) or (2), 5 per centum."

The provisions of section 600 of the Revenue Act of 1924 (43 Stat. 322, see 26 USCA § 881 note), applicable to case No. 3421, read:

"Sec. 600. On and after the expiration of thirty days after the enactment of this Act there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentage of the price for which so sold or leased—

"(1) Automobile truck chassis and automobile wagon chassis sold or leased for an amount in excess of $1,000, and automobile truck bodies and automobile wagon bodies sold or leased for an amount in excess of $200 (including in both cases tires, inner tubes, parts, and accessories therefor sold on or in connection therewith or with the sale thereof), 3 per centum. A sale or lease of an automobile truck or of an automobile wagon shall, for the purposes of this subdivision, be considered to be a sale of the chassis and of the body;

"(2) Other automobile chassis and bodies and motor cycles (including tires, inner tubes, parts, and accessories therefor sold on or in connection therewith or with the sale thereof), except tractors, 5 per centum. A sale or lease of an automobile shall, for the purposes of this subdivision, be considered to be a sale of the chassis and of the body;

"(3) Tires, inner tubes, parts, or accessories for any of the articles enumerated in subdivision (1) or (2), sold to any person other than a manufacturer or producer of any of the articles enumerated in subdivision (1) or (2), 2½ per centum. This subdivision shall not apply to chassis or bodies for automobile trucks, automobile wagons, or other automobiles."

The scheme of these statutory provisions is to tax sales of tires, inner tubes, parts and accessories sold with and as equipment of automobile trucks, automobile wagons, and motorcycles, as being comprehended in the taxable sales of the vehicles themselves, and at the same rate. Thus there is no doubt that a battery, installed in and sold with a new automobile, by the manufacturer of the automobile, is a part or accessory of the automobile, and taxable. The plaintiff did not sell vehicles with chains attached, but only sold chains separately. Consequently, the sales of chains, if taxable, were taxable only under the third subdivision of section 900, as sales of "parts, or accessories for any of the articles enumerated in subdivision (1) or (2), sold to any person other than a manufacturer or producer of any of the articles enumerated in subdivision (1) or (2)."

The articles thus enumerated were automobile trucks, automobile wagons, other automobiles, and motorcycles, except tractors. If the chains sold were adapted for use only on such articles, they would properly be classed as accessories. Even if there was some other use of the chains for which they were not so well adapted, they might still be classed as accessories. But if they were not better adapted for use on the enumerated vehicles than for some other uses, they would not, sold separately, be accessories for such vehicles. Universal Battery Co. v. United States, 281 U. S. 580, 50 S. Ct. 422, 74 L. Ed. 1051. It seems clear that bolts and nuts of standard sizes, for example, could not properly be considered accessories of the taxable vehicles enumerated, merely because there happened to be places on such vehicles where the bolts and nuts would fit. In this connection, Mr. Justice Van Deventer speaking for the Supreme Court of the United States in the Universal Battery Co. Case, supra, said, 281 U. S. 580, at page 583, 50 S. Ct. 422, 423, 74 L. Ed. 1051: "Certainly it would be unreasonable to hold that articles equally adapted to a variety of uses and commonly put to such uses, one of which is use in motor vehicles, must be classified as parts or accessories for such vehicles. And it would be also unreasonable to hold that articles can be so classified only where they are adapted solely for use in motor vehicles and are exclusively so used. Magone v. Wiederer, 159 U. S. 555, 559, 16 S. Ct. 122, 40 L. Ed. 258. We think the view taken in the administrative regulations is reasonable and should be upheld. It is that articles primarily adapted for use in motor vehicles are to be regarded as parts or accessories of such vehicles, even though there has been some other use of the articles for which they are not so well adapted."

The first question of fact for decision is, therefore, whether the chains sold by plaintiff are equally adapted for use on the vehicles enumerated in subdivisions (1) and (2) of section 900, and for use on other vehicles, or whether they are not so well adapted for use on other vehicles.

The enumeration of vehicles expressly excludes tractors, and it has been held that it does not include fire engines and other fire fighting apparatus. American-La France Fire Engine Company v. Riordan, (C. C. A. 2) 6 F.(2d) 964. Certain other motor vehicles have been held by administrative regulation (article 12, Regulations 47, Revised December, 1920) not to be included in the enumeration. The ruling reads: "Self-propelling motor-driven machines, such as concrete mixers, stone crushers, excavating shovels, ditch-diggers, etc., and machines which perform a me-

chanical function as they move along highways and roads, such as road graders, road scrapers, street sweepers, road sprinklers and oilers, are not taxable." The same principle would apply to snow plows.

The evidence is conclusive that the tire chains manufactured by plaintiff are equally adapted for use on these nontaxable vehicles as on the enumerated taxable vehicles.

Defendant argues that the primary purpose of design, manufacture, and sales effort is with respect to use on taxable vehicles, and that this fact determines that the chains are primarily adapted for use on such vehicles. The intention of the inventor, manufacturer, or salesmen has nothing to do with the actual utility of the article. Many things designed for a particular purpose have equal utility value for other purposes. But it seems clear that, even from the standpoint of intention, the chains were not primarily adapted to taxable vehicles. They were intended to be applied to wheels of various sizes with pneumatic or solid rubber tires. It cannot be said that there was any intention of designer or manufacturer that they should more successfully perform their function on wheels of these types on taxable vehicles than on wheels of the same types on nontaxable vehicles. In fact, it is quite clear that the designers and manufacturers considered only mechanical problems, and had no distinction in mind between taxable and nontaxable vehicles using the same sort of wheels.

In the case of an article which could be used equally well on a taxable vehicle or otherwise, it cannot be said to become an accessory of such taxable vehicle until it actually becomes a part of the equipment thereof. Until such time, it is not an accessory, but is an independent unit, which may or may not become an accessory of a taxable vehicle. It therefore has not the necessary taxable status at the time of the sale by the manufacturer. The situation would be very different if the article were such that by its very nature it could not be used equally well for any purpose except in connection with a taxable vehicle.

On the previous trial, this court found that the chains sold by plaintiff were not accessories of automobile trucks, automobile wagons, other automobiles, or motorcycles, and that the sales were not taxable. The Circuit Court of Appeals reversed the judgment for plaintiff, holding that the chains were such accessories and that their sales were taxable. The Supreme Court, on certiorari, held that the issue was one of fact, and that there was sufficient evidence to support this court's finding, and that the Circuit Court of Appeals erred in reversing it. The evidence introduced at the former trial on this issue was substantially all re-introduced at the second trial, and further evidence was taken, establishing beyond doubt the crucial fact that the identical chains used on taxable automobiles function equally well and are commonly used on nontaxable vehicles.

I, therefore, find as a fact that the sales of the chains were not taxable.

The remaining question is whether recovery by plaintiff is barred by the provisions of section 424 (a) of the Revenue Act of 1928.

Plaintiff contends that it paid the taxes on its own account, and did not collect the amount thereof, as such, from its customers. If so, recovery is not barred by section 424 (a). On the former trial, the court took the position that the tax was in legal effect "collected" from the customers, but that they did not bear the economic burden of the tax because the manufacturer itself absorbed the burden by reducing the price of the commodity by the amount of the tax, and also in effect returned the tax to the purchasers by thus reducing the price. The Circuit Court of Appeals did not pass upon this point, but the Supreme Court reversed this court and remanded the case for a new trial because of insufficiencies in the special findings. The Supreme Court held that the judgment of this court, as far as this point was concerned, was based, not upon a finding of fact, but upon "unsatisfactory reasoning having little tendency to establish its objective."

At the second trial much evidence was offered on the subject. It appears that plaintiff originally, in February, 1919, when this tax was first enacted, added the amount thereof as a separate item in billing its customers. It continued this practice approximately three weeks only. During this time, the procedure was found to be impracticable, as it would have rendered it necessary for plaintiff's customers to have entirely revised their resale prices. On March 28, 1919, plaintiff mailed the following letter to all its distributors:

"Excise Tax on Automobile Accessories.

"Gentlemen:

"For various considerations we have decided to discontinue the charge of 5% to cover Excise Tax on automobile accessories, and this tax will therefore be absorbed by us.

"You may deduct from your next remittance the amount of any charges representing this tax which have been added to invoices we have rendered you.

"A determining factor in our decision to assume this expense is our desire to relieve our distributors of the necessity of revising their resale prices. In other respects our prices on Tire Chains and accessories remain unchanged.

"Assuring you of our desire as far as possible to co-operate with you at all times, we are

"Yours very truly,
"American Chain Company, Inc."

From March 28, 1919, to July 12, 1923, plaintiff's invoices and bills contained no reference to the tax. On the latter date, plaintiff began the practice of making the following notation on its invoices: "1/21st of above amounts represents tax." No change was made in the price of chains to customers. Cash discounts were calculated on the amount of the invoices, without deduction for tax. The notation was made in an attempt to obtain the benefit of a provision of Regulations 47 (Revised December, 1920) of the Bureau of Internal Revenue, article 3, which reads:

"Art. 3. Basis of tax.—The tax is imposed on the sale by the manufacturer and should be returned and paid by him whether the sales price is actually collected or not. It is measured by the price for which the article is sold by the manufacturer and not by the list price where that differs from the actual sales price. If the price of a taxable article is increased to cover the tax, and the article is sold at such price, including the tax, the tax is on such increased price.

"The manufacturer may reimburse himself in the amount of the tax by agreement with the purchaser in the following manner: (a) By quoting the selling price and the tax in separate and exact amounts, and where invoices are rendered, by segregating these amounts on the invoices as outlined in examples (1) and (6) below; or (b) by stating to the purchaser in advance of the sale what portion of the quoted price represents the price charged for the article and what portion represents tax, and where invoices are rendered by invoicing in the manner outlined in examples (2) and (3) below, in which cases the amount of the tax need not be included in the price of the article in computing the tax.

"Where goods are ordered direct from the manufacturer with no agreement as to price, the tax is based on the amount billed or invoiced to the purchaser as the selling price. Mere statements or agreements that the quoted or contract price includes the tax do not operate to exclude any part thereof from tax, unless the price is billed in the manner outlined in examples (1), (2), (3), and (6) below.

"Where a lump sum is specified as the price of a taxable article or articles, and other articles not taxable and not a component part of the taxable articles are included in the price, the tax attaches to the entire amount unless the selling prices of the taxable and non-taxable articles are segregated. In such case, the tax will be measured by the price specified as the selling price of the taxable article or articles (examples 4 and 5). The following examples illustrate the method by which the manufacturer may separate the tax from the selling price in invoicing goods to the purchaser.

"Example (1). A, the manufacturer, quotes a selling price to B of $1 and bills the goods to B as:

"'Article No. 1 selling price, $1; tax, $0.05.'

"Example (2). A, the manufacturer, quotes a selling price of $1.05, stating that the price includes a tax of 5 cents, and bills the goods to B as:

"'Article No. 1, selling price $1.05, 5 cents of the total represents tax.'

"Example (3). A, the manufacturer, quotes a selling price of $1.05, stating that 1/21 of the price represents tax, and bills the goods to B as:

"'Article No. 1, selling price $1.05, 1/21 of the total represents tax.'

"The tax in examples (1), (2) and (3) is computed upon $1, the quoted and actual selling price.

"Example (4). A, the manufacturer, quotes a cost price or contracts to sell goods at $1.05, including tax, and bills the goods to B as:

" 'Article No. 1, selling price including tax $1.05.'

"The tax is computed upon $1.05, the quoted and invoiced selling price.

"Example (5). A manufacturer sells an automobile to B, including insurance, gas, and oil, and bills it as:

" 'One car, $2,150.'

"The tax is based on the full amount of $2,150.

"Example (6). If in example (5) the invoice separates the charges into items as, 'car $2,000, gas and oil, $20, insurance $30, tax $100' the tax is based on $2,000, the selling price of the car as specified."

The notation, "1/21st of above amounts represents tax," did not affect the amount of the selling price quoted in the invoices. The previous price was neither increased nor decreased. There was no statement to the effect that 20/21 represented the price. · The notation, "1/21st of above amounts represents tax," did no more than advise purchasers that plaintiff intended to use 1/21 of the selling price to pay the tax—in other words, to absorb it, as plaintiff had previously notified its customers it would do. It is significant that cash discounts were figured on the total amount. This shows that both the plaintiff and its customers treated the entire amount of the invoice as the selling price, and shows not only that plaintiff did not represent to its customers that they were paying the tax, but that the customers understood perfectly well that they were not paying it. The notation conveyed no further information to the purchasers than that plaintiff intended to devote a specified portion of the amount of the invoice to the payment of the tax.

The provision of example (3) of article 3 of Regulations 47 (Revised December, 1920), above quoted, is inconsistent with this view. But the amount of the selling price is a question of fact, upon which the regulation can have no determinative effect. The regulation attempts to prescribe in advance what the finding of fact shall be in cases where the notation "1/21 of the total represents tax" is used, and prescribes a conclusion which, in the instant case at least, would be contrary to fact. I am satisfied that the regulation has no force, and that its only effect, in the instant case, has been to mislead the plaintiff.

The error in the published regulation was recognized by Bureau of Internal Revenue officials in the administration of the law. In 1922, the Bureau promulgated a ruling, published in Cumulative Bulletin I-2, at page 293, in which it is said:

"The sign must show that a definite portion of the quoted price represents the selling price and another definite portion the tax. Thus a sign clearly stating that of the quoted 100/103 constitutes the selling price of the candy and 3/103 represents the tax due is satisfactory. Mere statements that the price includes the tax do not operate to exclude any part thereof from tax.

"This holding applies as well to the Revenue Act of 1918 as to the Act of 1921, but inasmuch as section 900 of the Revenue Act of 1918 imposed a 5 per cent. tax, the fractions in the above illustrations should be changed to 20/21 and 1/21, respectively."

This is the rule in vogue during the period from July 12, 1923, to June 30, 1924, involved in this suit. It is entirely harmonious with the general principles stated in article 3 of Regulations 47 (Revised December, 1920), and conflicts only with example 3 of that article. It is apparent that the Bureau officials disregarded example 3 in practice, and that the ruling of 1922, above quoted, was regarded as superseding it. This is in accordance with the testimony of defendant's witness Max E. Hoyt, head of the Sales Tax Division of the Bureau of Internal Revenue, who said that the Bureau would not recognize any purported segregation by way of notation on an invoice which did not show the portion of the amount of the invoice that represented the selling price as well as the portion that represented the tax. He further testified that the rulings and practice of the Bureau required that both the selling price and the tax be shown in order to render any such notation effective for tax reduction. He further said that the requirement that the portion of the invoice representing selling price be stated was "so that the tax would show up at the proper rate," and that a notation reading "1/21st represents tax," without more, would be ignored because of noncompliance with the regulations.

Plaintiff is not estopped from asserting that the selling price was the full amount of the invoice. It did not lead either its customers or the Bureau of Internal Revenue into believing that the customers were paying the tax. It was itself

misled by the regulation above quoted into believing that it might properly compute its tax on the basis of 1/21 of the amount of the invoice by making the notation "1/21st of above amount represents tax." In due course of administration, the Bureau, according to the testimony of Mr. Hoyt and the ruling of 1922, would have called upon plaintiff for additional tax. The supposed tax undoubtedly was erroneously computed, and, had the chains sold been accessories, should have been calculated at 1/20 instead of 1/21 of the invoice prices. But since the sales were nontaxable, whatever tax was paid, whether correctly or incorrectly computed, is recoverable.

■ I find that the selling price of the chains was the total amount stated in the invoices, and that the tax never was collected, directly or indirectly, by plaintiff from its customers. Section 424 (a) of the Revenue Act of 1928 does not preclude recovery.

### Findings of Fact and Conclusions of Law in Case No. 3360.

The above-entitled action came on regularly to be heard upon a stipulation and order consolidating said action with Nos. 3371 and 3421 for trial, before the court, a trial by jury having been waived. Witnesses were sworn and testified and documentary evidence was introduced, and the court being fully advised in the premises, overrules all requested findings not herein covered, and makes the following:

### Findings of Fact.

1. Plaintiff is, and at all times herein mentioned has been, a corporation organized under the laws of the state of New York, with its principal place of business at the city of Bridgeport, state of Connecticut.

2. During the period herein involved, and for a number of years and subsequent thereto, it was and still is engaged in the manufacture and sale of, among other things, Weed tire chains, Weed tire chain grips, chain grips, and other articles of a similar nature for use in preventing tires on wheels of motor vehicles from skidding or side slipping and in giving them additional traction. In general, the tire chains consisted of two long side chains, with cross chains. They were made in several sizes to fit tires of various sizes, and to meet heavy duty requirements as well as light requirements.

3. Between January 31, 1923, and January 31, 1924, plaintiff paid to defendant Robert O. Eaton, as collector of internal revenue for the District of Connecticut, the sum of $335,668.88, as manufacturer's excise tax under the provisions of section 900 (3) of the Revenue Act of 1921, of which the sum of $329,250 was paid as tax on the sale of chains which were not only adapted for use and commonly used not only on automobile trucks, automobile wagons, and on other automobiles, but were equally adapted for use and commonly used on some or all of the following motor vehicles other than automobile trucks, automobile wagons, and other automobiles, to wit: Fire engines, fire-fighting apparatus, tractors, snowplows, snow brooms, snow fighters, road graders, street sprinklers, and road machines.

4. On February 8, 1927, plaintiff filed a claim for refund of the tax so paid, on the ground that the sales so taxed were not taxable under the said statute, which claim was, on the 5th day of July, 1927, disallowed by the Commissioner of Internal Revenue, and at all times since said date the defendant and said Commissioner of Internal Revenue have refused to refund to plaintiff the amount of said payments or any part thereof. .

5. The present suit involves only the taxes paid on sales of Weed tire chains to persons other than manufacturers supplying tax exempt certificates. During the taxable period plaintiff's general method of sale of Weed tire chains was to sell them to distributors or jobbers, who, in turn, sold them to dealers, and the dealers sold them to the trade.

6. Every size of Weed tire chain was designed to fit and was sold for use on standard solid or pneumatic rubber tires, which sizes were fixed and determined by the Tire & Rim Association, with respect to pneumatic tires, and by the Society of Automotive Engineers, with respect to solid tires.

7. Weed tire chains were commonly used on motorized fire apparatus, road scrapers, snow-plows, tractors, and similar nontaxable vehicles where such vehicles were equipped with standard passenger automobile or automobile truck pneumatic tires or standard automobile truck solid tires.

8. Weed tire chains were primarily adapted for use on standard pneumatic or solid tires and were equally adapted for

use on such tires whether on taxable or nontaxable or tax exempt vehicles.

9. Weed tire chains sold by plaintiff to persons other than manufacturers supplying tax exempt certificates were not parts or accessories for the articles enumerated in subdivision (1) or (2) of section 900 of the Revenue Act of 1921.

10. For several weeks after the Manufacturer's Excise Tax became effective, namely, February 25, 1919, plaintiff billed chains to its customers at the same prices as before the tax went into effect, but added to their invoice the item, "Plus 5% excise tax," and the purchaser paid the regular list price in effect before the tax law became effective plus 5 per cent. tax. On March 27, 1919, plaintiff sent all jobbers of Weed chain grips except those in Chicago, Boston, Philadelphia, and west of Denver, the following telegram: "We will absorb excise tax on automobile accessories. Letter follows." Plaintiff had district offices in these other points and these offices were ordered to notify the jobbers in their territory of the telegram that plaintiff had sent to the other jobbers from Bridgeport.

On March 28, 1919, plaintiff sent to all distributors of its Weed chain grips the letter referred to in the telegram, which is set forth in full, supra.

In accordance with this letter credit memoranda covering the tax previously charged to the jobbers who had purchased chains during the period when the plaintiff had added 5 per cent. to the list price were forwarded to all such customers, and were posted to the credit of the customers' accounts on the accounts receivable ledger. Thus, the excise tax which had been collected was returned.

11. From February 25, 1919, the date on which the manufacturer's excise tax became effective, until the end of the taxable period, the plaintiff, except for the interval commencing February 25, 1919, and ending March 28, 1919, billed the purchasers of Weed chain grips at its regularly advertised list prices, less discounts, and it computed and paid the tax on the invoice prices of said Weed chain grips.

The only general price changes between February 25, 1919, and the end of the taxable period were on March 1, 1920, and on July 1, 1922, when there were revisions of prices in which the prices generally were reduced, and on August 24, 1922, at which time the discounts from list prices were uniformly increased, and on April 18, 1923, there was a general revision of prices in which the prices on certain sizes of chains were reduced, prices on certain sizes remained the same, and prices on certain sizes were increased.

During the taxable period the taxes upon Weed chain grips were paid from the general funds of the plaintiff and were charged upon the accounting records of the plaintiff to expense, and were returned by the plaintiff in its income tax return for the year 1923 as an item of expense, which return was allowed by the Bureau of Internal Revenue.

During the taxable period the plaintiff used the same method of computing costs in effect prior to February 25, 1919, without making any allowance for the tax; said method being to add to the factory production costs 50 per cent. for all overhead costs.

12. Approximately July 12, 1923, the plaintiff, without changing its quoted prices for Weed chain grips, began to place a notation at the foot of its invoices as follows: "1/21 of Above Amounts Represents Federal Excise Tax." Otherwise the invoices used from July 12, 1923, to the end of the taxable period were identical with the invoices used prior to that date and subsequent to March 28, 1919.

13. After July 12, 1923, in making its computations, plaintiff deducted 1/21 of the sales prices shown on the invoices, and took as tax 5 per cent. of the balance, which was equal to the 1/21 of the sales price so deducted. The plaintiff believed that by use of this notation it could avoid paying a tax on a tax and reduce the expense to the company to that extent. After July 12, 1923, the plaintiff continued to handle its records in so far as its accounting records were concerned in exactly the same way it did before the notation appeared on the invoices, and continued to pay the taxes out of its general funds, and to charge the amount of taxes so paid to tax expense, and to return same in its income tax returns as an expense.

After July 12, 1923, to the end of the taxable period, cash discounts allowed by the plaintiff and deducted by the purchasers on the invoices of its chains were on the same basis as prior to July 12, 1923, namely, on the invoice price in dollars and not on 20/21 of such invoice price.

14. At no time during the taxable period did the plaintiff use any notation upon

its invoices that 20/21 of the amount of the invoice represented sales price.

Under Regulation 47 a taxpayer in order to separate the tax and the selling price was required to quote the tax and the selling price in separate amounts, and so stamp his invoices as to give effect thereto, and it was a ruling of the Treasury Department that when the selling price of an article was expressed in dollars and there was a notation on the invoice that 1/21 of the amount of the invoice represented tax, the tax was collectible on the full amount of the invoice in dollars and not on 20/21 thereof. The plaintiff under a mistaken belief as to its rights under Regulation 47 underpaid the tax if the same were otherwise collectible during the part of the taxable period between July 12, 1923, and December 31, 1923.

15. After July 12, 1923, and to the end of the taxable period, the real selling price of Weed chain grips was the price in dollars stated on the invoice and not 20/21 thereof.

16. The effect of the notation on the invoices of the plaintiff that "1/21st of the above amounts represents Federal Excise Tax" did not constitute a representation to the purchasers of chains that the tax was being collected from them.

17. None of the amounts paid as taxes on Weed chain grips during the taxable period were collected, directly or indirectly, from the purchasers of its chains, and during said taxable period the plaintiff bore the burden of the tax.

On the foregoing findings of fact, the court reaches the following:

### Conclusions of Law.

That the taxes paid and sought to be refunded were not levied by the Revenue Act of 1921 and were not due from plaintiff to defendant; and

That plaintiff is entitled to recover from defendant the sum of $329,250 with interest from January 31, 1923, and costs of suit herein.

### Findings of Fact in Case No. 3371.

1. Plaintiff is, and at all times herein mentioned has been, a corporation organized under the laws of the state of New York, with its principal place of business at the city of Bridgeport, state of Connecticut.

2. During the period herein involved, and for a number of years prior and subsequent thereto, it was and still is engaged in the manufacture and sale of, among other things, Weed tire chains, Weed tire chain grips, chain grips, and other articles of a similar nature for use in preventing tires on wheels of motor vehicles from skidding or side slipping and in giving them additional traction. In general, the tire chains consisted of two long side chains, with cross chains. They were made in several sizes to fit tires of various sizes, and to meet heavy duty requirements as well as light requirements.

3. Between July 31, 1922, and January 31, 1923, plaintiff paid to defendant Robert O. Eaton, as collector of internal revenue for the District of Connecticut, the sum of $177,159.97, as manufacturer's excise tax under the provisions of section 900 (3) of the Revenue Act of 1921, of which the sum of $172,470.36 was paid as tax on the sale of chains which were not only adapted for use and commonly used not only on automobile trucks, automobile wagons, and on other automobiles, but were equally adapted for use and commonly used on some or all of the following motor vehicles other than automobile trucks, automobile wagons, and other automobiles, to wit: Fire engines, fire-fighting apparatus, tractors, snowplows, snow brooms, snow fighters, road graders, street sprinklers, and road machines.

4. On August 31, 1926, plaintiff filed a claim for refund of the tax so paid, on the ground that the sales so taxed were not taxable under the said statute, which claim was, on the 23d day of August, 1927, disallowed by the Commissioner of Internal Revenue, and at all times since said date the defendant and said Commissioner of Internal Revenue have refused to refund to plaintiff the amount of said payments or any part thereof.

5. The present suit involves only the taxes paid on sales of Weed tire chains to persons other than manufacturers supplying tax exempt certificates. During the taxable period plaintiff's general method of sale of Weed tire chains was to sell them to distributors or jobbers, who, in turn, sold them to dealers, and the dealers sold them to the trade.

6. Every size of Weed tire chain was designed to fit and was sold for use on standard solid or pneumatic rubber tires, which sizes were fixed and determined by the Tire & Rim Association, with respect to pneumatic tires, and by the Society of

Automotive Engineers, with respect to solid tires.

7. Weed tire chains were commonly used on motorized fire apparatus, road scrapers, snowplows, tractors, and similar nontaxable vehicles where such vehicles were equipped with standard passenger automobile or automobile truck pneumatic tires or standard automobile truck solid tires.

8. Weed tire chains were primarily adapted for use on standard pneumatic or solid tires, and were equally adapted for use on such tires whether on taxable or nontaxable or tax exempt vehicles.

9. Weed tire chains sold by plaintiff to persons other than manufacturers supplying tax exempt certificates were not parts or accessories for the articles enumerated in subdivision (1) or (2) of section 900 of the Revenue Act of 1921.

10. For several weeks after the manufacturer's excise tax became effective, namely, February 25, 1919, plaintiff billed chains to its customers at the same prices as before the tax went into effect, but added to their invoice the item, "Plus 5% excise tax," and the purchaser paid the regular list price in effect before the tax law became effective plus 5 per cent. tax. On March 27, 1919, plaintiff sent all jobbers of Weed chain grips except those in Chicago, Boston, Philadelphia, and west of Denver the following telegram: "We will absorb excise tax on automobile accessories. Letter follows." Plaintiff had district offices in these other points and these offices were ordered to notify the jobbers in their territory of the telegram that plaintiff had sent to the other jobbers from Bridgeport.

On March 28, 1919, plaintiff sent to all distributors of its Weed chain grips the letter referred to in the telegram, which is set forth in full, supra.

In accordance with this letter, credit memoranda, covering the tax previously charged to the jobbers who had purchased chains during the period when the plaintiff had added 5 per cent. to the list price, were forwarded to all such customers, and were posted to the credit of the customers' accounts on the accounts receivable ledger. Thus, the excise tax which had been collected was returned.

11. From February 25, 1919, the date on which the manufacturer's excise tax became effective, until the end of the taxable period, the plaintiff, except for the interval commencing February 25, 1919, and ending March 28, 1919, billed the purchasers of Weed chain grips at its regularly advertised list prices, less discounts, and it computed and paid the tax on the invoice prices of said Weed chain grips.

The only general price changes between February 25, 1919, and the end of the taxable period were on March 1, 1920, and on July 1, 1922, when there were revisions of prices in which the prices generally were reduced, and on August 24, 1922, at which time the discounts from list prices were uniformly increased, and on April 18, 1923, there was a general revision of prices in which the prices on certain sizes of chains were reduced, prices on certain sizes remained the same, and prices on certain sizes were increased.

During the taxable period the taxes upon Weed chain grips were paid from the general funds of the plaintiff and were charged upon the accounting records of the plaintiff to expense, and were returned by the plaintiff in its income tax return for the year 1922 as an item of expense, which return was allowed by the Bureau of Internal Revenue.

During the taxable period the plaintiff used the same method of computing costs in effect prior to February 25, 1919, without making any allowance for the tax; said method being to add to the factory production costs 50 per cent. for all overhead costs.

12. None of the amounts paid as taxes on Weed chain grips during the taxable period were collected, directly or indirectly, from the purchasers of its chains, and during said taxable period the plaintiff bore the burden of the tax.

On the foregoing findings of fact, the court reaches the following:

### Conclusions of Law.

That the taxes paid and sought to be refunded were not levied by the Revenue Act of 1921 and were not due from plaintiff to defendant; and

That plaintiff is entitled to recover from defendant the sum of $172,470.36, with interest from January 31, 1923, and costs of suit herein.

### Findings of Fact in Case No. 3421.

1. Plaintiff is, and at all times herein mentioned has been, a corporation organized under the laws of the state of New York, with its principal place of business at the city of Bridgeport, state of Connecticut.

2. During the period herein involved, and for a number of years prior and subsequent thereto, it was and still is engaged in the manufacture and sale of, among other things, Weed tire chains, Weed tire chain grips, chain grips, and other articles of a similar nature for use in preventing tires on wheels of motor vehicles from skidding or side slipping and in giving them additional traction. In general, the tire chains consisted of two long side chains, with cross chains. They were made in several sizes to fit tires of various sizes, and to meet heavy duty requirements as well as light requirements.

3. Between January 31, 1924, and July 31, 1924, plaintiff paid to defendant Robert O. Eaton, as collector of internal revenue for the District of Connecticut, the sum of $100,669.11 as manufacturer's excise tax under the provisions of section 900 (3) of the Revenue Act of 1921, and section 600 (3) of the Revenue Act of 1924 (26 USCA § 881 note), of which the sum of $98,416.41 was paid as tax on the sale of chains which were not only adapted for use and commonly used not only on automobile trucks, automobile wagons, and on other automobiles, but were equally adapted for use and commonly used on some or all of the following motor vehicles other than automobile trucks, automobile wagons, and other automobiles, to wit: Fire engines, firefighting apparatus, tractors, snowplows, snow brooms, snow fighters, road graders, street sprinklers, and road machines.

4. On February 6, 1928, plaintiff filed a claim for refund of the tax so paid, on the ground that the sales so taxed were not taxable under the said statute, which claim was, on the 15th day of March, 1928, disallowed by the Commissioner of Internal Revenue, and at all times since said date the defendant and said Commissioner of Internal Revenue have refused to refund to plaintiff the amount of said payments or any part thereof.

5. The present suit involves only the taxes paid on sales of Weed tire chains to persons other than manufacturers supplying tax exempt certificates. During the taxable period plaintiff's general method of sale of Weed tire chains was to sell them to distributors or jobbers, who, in turn, sold them to dealers, and the dealers sold them to the trade.

6. Every size of Weed tire chain was designed to fit and was sold for use on standard solid or pneumatic rubber tires, which sizes were fixed and determined by the Tire & Rim Association, with respect to pneumatic tires, and by the Society of Automotive Engineers, with respect to solid tires.

7. Weed tire chains were commonly used on motorized fire apparatus, road scrapers, snowplows, tractors, and similar nontaxable vehicles where such vehicles were equipped with standard passenger automobile or automobile truck pneumatic tires or standard automobile truck solid tires.

8. Weed tire chains were primarily adapted for use on standard pneumatic or solid tires, and were equally adapted for use on such tires whether on taxable or nontaxable or tax exempt vehicles.

9. Weed tire chains sold by plaintiff to persons other than manufacturers supplying tax exempt certificates were not parts or accessories for the articles enumerated in subdivision (1) or (2) of section 900 of the Revenue Act of 1921.

10. For several weeks after the manufacturer's excise tax became effective, namely, February 25, 1919, plaintiff billed chains to its customers at the same prices as before the tax went into effect, but added to their invoice the item, "Plus 5% excise tax," and the purchaser paid the regular list price in effect before the tax law became effective plus 5 per cent. tax. On March 27, 1919, plaintiff sent all jobbers of Weed chain grips except those in Chicago, Boston, Philadelphia, and west of Denver the following telegram: "We will absorb excise tax on automobile accessories. Letter follows." Plaintiff had district offices in these other points and these offices were ordered to notify the jobbers in their territory of the telegram that plaintiff had sent to the other jobbers from Bridgeport.

On March 28, 1919, plaintiff sent to all distributors of its Weed chain grips the letter referred to in the telegram, which is set forth in full, supra.

In accordance with this letter, credit memoranda, covering the tax previously charged to the jobbers who had purchased chains during the period when the plaintiff had added 5 per cent. to the list price, were forwarded to all such customers, and were posted to the credit of the customers' accounts on the account receivable ledger. Thus, the excise tax which had been collected was returned.

11. From February 25, 1919, the date on which the manufacturer's excise tax be-

came effective, until the end of the taxable period, the plaintiff, except for the interval commencing February 25, 1919, and ending March 28, 1919, billed the purchasers of Weed chain grips at its regularly advertised list prices, less discounts, and it computed and paid the tax on the invoice prices of said Weed chain grips.

The only general price changes between February 25, 1919, and the end of the taxable period were on March 1, 1920, and on July 1, 1922, when there were revisions of prices in which the prices generally were reduced, and on August 24, 1922, at which time the discounts from list prices were uniformly increased, and on April 18, 1923, there was a general revision of prices in which the prices on certain sizes of chains were reduced, prices on certain sizes remained the same, and prices on certain sizes were increased.

During the taxable period the taxes upon Weed chain grips were paid from the general funds of the plaintiff and were charged upon the accounting records of the plaintiff to expense, and were returned by the plaintiff in its income tax return for the year 1923 as an item of expense, which return was allowed by the Bureau of Internal Revenue.

During the taxable period the plaintiff used the same method of computing costs in effect prior to February 25, 1919, without making any allowance for the tax; said method being to add to the factory production costs 50 per cent. for all overhead costs.

12. Approximately July 12, 1923, the plaintiff, without changing its quoted prices for Weed chain grips, began to place a notation at the foot of its invoices as follows: "1/21 of Above Amounts Represents Federal Excise Tax." Otherwise the invoices used from July 12, 1923, to the end of the taxable period were identical with the invoices used prior to that date and subsequent to March 28, 1919.

13. After July 12, 1923, in making its computations, plaintiff deducted 1/21 of the sales prices shown on the invoices, and took as tax 5 per cent. of the balance, which was equal to the 1/21 of the sales price so deducted. The plaintiff believed that by use of this notation it could avoid paying a tax on a tax and reduce the expense to the company to that extent. After July 12, 1923, the plaintiff continued to handle its records in so far as its accounting records were concerned in exactly the same way it did before the notation appeared on the invoices, and continued to pay the taxes out of its general funds, and to charge the amount of taxes so paid to tax expense and to return same in its income tax returns as an expense.

After July 12, 1923, to the end of the taxable period, cash discounts allowed by the plaintiff and deducted by the purchasers on the invoices of its chains were on the same basis as prior to July 12, 1923, namely, on the invoice price in dollars and not on 20/21 of such invoice price.

14. At no time during the taxable period did the plaintiff use any notation upon its invoices that 20/21 of the amount of the invoice represented sales price.

Under Regulation 47 a taxpayer in order to separate the tax and the selling price was required to quote the tax and the selling price in separate amounts, and so stamp his invoices as to give effect thereto, and it was a ruling of the Treasury Department that when the selling price of an article was expressed in dollars and there was a notation on the invoice that 1/21 of the amount of the invoice represented tax, the tax was collectible on the full amount of the invoice in dollars, and not on 20/21 thereof. The plaintiff under a mistaken belief as to its rights under Regulation 47 underpaid the tax if the same were otherwise collectible during the part of the taxable period between July 12, 1923, and December 31, 1923.

15. After July 12, 1923, and to the end of the taxable period, the real selling price of Weed chain grips was the price in dollars stated on the invoice and not 20/21 thereof.

16. The effect of the notation on the invoices of the plaintiff that "1/21st of the above amounts represents Federal Excise Tax" did not constitute a representation to the purchasers of chains that the tax was being collected from them.

17. None of the amounts paid as taxes on Weed chain grips during the taxable period were collected, directly or indirectly, from the purchasers of its chains, and during said taxable period the plaintiff bore the burden of the tax.

On the foregoing findings of fact, the court reaches the following:

### Conclusions of Law.

That the taxes paid and sought to be refunded were not levied by the Revenue

Act of 1921 and were not due from plaintiff to defendant; and

That plaintiff is entitled to recover from defendant the sum of $98,416.41, with interest from July 31, 1924, and costs of suit herein.

· Therefore, the plaintiff is entitled to judgment in case No. 3360 for $329,250, with interest from January 31, 1924; and in case No. 3371 in the amount of $172,-470.36, with interest from January 31, 1923; and in case No. 3421 in the amount of $98,416.41, with interest from July 31, 1924—together with costs in each case.