**AMERICAN CHAIN CO., Inc., v. EATON, Collector of Internal Revenue.**

Nos. 3360, 3371, 3421.

District Court, D. Connecticut.

March 5, 1932.

Long, Chamberlain & Nyce, of Washington, D. C. (Chester I. Long and Charles P. Swindler, both of Washington, D. C., of counsel), and Marsh, Stoddard & Day, of Bridgeport, Conn. (David S. Day, of Bridgeport, Conn., of counsel), for plaintiff.

C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, E. F. McMahon, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., and John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn., for defendant.

HINCKS, District Judge.

These are three actions brought by a corporation of New York against the collector of internal revenue for this district for the recovery of excise taxes exacted by the Commissioner and paid by the plaintiff upon the sale of Weed tire chains for automotive vehicles. The actions are identical as to the pleadings, the only difference being that each action covers a different taxable period.

---

[2] Not for publication.

Thus case No. 3371, begun in August, 1929, seeks recovery of the tax paid for the taxable period of July 1 to December 31, 1922, in the amount of $183,365.49, with interest. Case No. 3360, begun in July, 1929, seeks recovery of the tax paid for the taxable period of January 1 to December 31, 1923, in the amount of $352,111.51, with interest. And case No. 3421, begun in March, 1930, seeks recovery of the tax paid for the taxable period of January 1 to June 30, 1924, in the amount of $105,031.43, with interest.

The cases were brought on together for trial before a jury, but at the close of the plaintiff's case, at the suggestion of the court, both parties waived their right to jury trial, and the remainder of the evidence, and the issues both of fact and of law, were submitted to the court for decision.

### The Issues and Findings Thereon.

The complaint in each case alleges that the plaintiff is a corporation engaged in the manufacture and sale of tire chains such as are commonly used on the tires of automotive vehicles; and that during the respective taxable periods it sold a large number of said chains; that under the Revenue Acts of 1921 and 1924 (42 Stat. 227; 43 Stat. 253) a tax of 5 per cent. was assessed upon such sales and subsequently collected; that the plaintiff duly filed its claim for refund, which was rejected and denied by the Commissioner of Internal Revenue. As to the foregoing allegations there was no dispute. The only issues were raised by the defendant's denial addressed to paragraphs 1, 5, and 7 of the complaint.

Paragraph 1 alleged that the plaintiff "brings this action in its own right." The allegation was supported by credible testimony on the part of the plaintiff, and was not disputed by the defendant on the trial. Doubtless the contention involved was tacitly abandoned by the defendant. In any, event, on the evidence as to this issue I find in favor of the plaintiff, and the issue may be laid out of a further consideration of the case.

Paragraph 5 of the complaint alleged that the taxes in question were paid entirely by the plaintiff, and neither directly nor indirectly by the plaintiff's purchasers. These allegations also were denied.

As to this issue, I find that for the taxable period involved in case No. 3371, the plaintiff has sustained the burden of proof. The evidence on this issue relating to the periods involved in cases Nos. 3360 and 3421

disclosed that the plaintiff at some time during the period between January 1 and December 31, 1923, reduced its sale prices by the amount of the tax and so stamped its invoices and bills as to indicate that of the amount charged to the customer $\frac{1}{21}$ part was required by the sales tax in question. Thereafter the plaintiff computed and paid the excise tax upon the basis of the price thus reduced, thereby saving to itself the payment of a tax upon a tax, 5 per cent. on 5 per cent. The arrangement cost the customer nothing, as he paid in the aggregate just what he had paid before. Consequently the plaintiff did not thereby pass the economic burden of the tax to its purchasers. However, since under this arrangement the invoices indicated the $\frac{1}{21}$ of the amount billed was for the tax, I am constrained to conclude that the balance, $\frac{20}{21}$, was the real sale price, especially since the tax was thereafter paid on that basis. This requires the conclusion of fact that in legal effect the tax was collected from the purchaser. But in view of the fact that the sales prices in vogue prior to the inauguration of this arrangement were thereafter reduced by the amount of the tax, I find further that in so far as the tax was collected from purchasers, it was wholly returned to them.

The issue which produced by far the greater part of the record was whether or not the chains, upon the sale of which the tax was laid, were "accessories for any of the articles enumerated" within the purview of section 900 of the Revenue Act of 1921. This issue was framed principally by the allegations of paragraph 7 of the complaint that the chains in question were of a design, shape, size, and dimensions exactly similar to those used for tires of tractors, fire engines, and similar vehicles not within the purview of the Revenue Act, and that there was nothing in their design and construction to make them primarily adapted only for use on the taxable articles enumerated therein; that they were not sold on or in connection with such taxable vehicles; that they were not accessories of such vehicles within the meaning of the act, but were in fact commercial commodities interchangeable as to their use on both taxable and nontaxable vehicles, and were advertised, and commonly sold and profitably used for such general purposes. These allegations were denied.

From the evidence I find that the chains in question were all sold by the plaintiff to jobbers and dealers, so that even the plaintiff did not know, and could not know, how

many of the chains thus sold were eventually used or purchased for use on nontaxable vehicles; that said chains generally were advertised by the plaintiff for use on nontaxable vehicles as well as taxable ones; that said chains were manufactured in a multitude of sizes, varying not only in the length of the side or rim chain, but also in the length of the cross-chain, and generally heavier wire was used throughout in construction of the larger sizes. Of this number, however, forty nine sizes, which will be listed in Schedule A, hereinafter referred to, fitted at least one type of nontaxable vehicles equally as well as any taxable vehicle; that they operated as effectively upon the one class of vehicles as upon the other; that wholly without adaptation for the purpose they were interchangeable upon such vehicles of both classes as used tires of substantially the same size; that there was no differentiation either of construction or of design in the chains used on the tires of nontaxable vehicles from those used on tires of taxable vehicles; and that in ordering chains, the universal practice was to order by size only, without specification of the purpose, i. e., whether for taxable or nontaxable vehicles.

If it be deemed of any importance, notwithstanding the views expressed in the following opinion, it may be noted as a part of the findings of fact that the mechanical design (i. e., the invention) of the plaintiff's chains was embodied in patents issued as early as 1904, and chains were in use for automobiles and trucks before the internal-combustion tractor came upon the market.

It may also be noted that the number of taxable vehicles during the taxable periods exceeded the number of nontaxable motor vehicles. If that fact was not fully established by competent evidence, at least it was conceded by the plaintiff on brief.

On the subordinate facts, I conclude that the chains listed in Schedule A were not primarily adapted for use on taxable vehicles, but were equally adapted for use on nontaxable vehicles.

Although, as stated, the plaintiff did not, and necessarily could not, prove by direct evidence that any particular chain found its way to the wheel of a nontaxable vehicle, yet from the evidence that the sizes listed in Schedule A were adapted for such use, and that it was common practice for all types of nontaxable vehicles generally to use such chains and, indeed, that the use of such chains was often required for the successful and efficient operation of such vehicles, I

conclude that the sizes listed in Schedule A were actually used on nontaxable vehicles, and that such use was common, substantial, and profitable—not exceptional or experimental only.

The evidence does not, however, establish the fact that there were in existence during the taxable periods nontaxable vehicles which respectively have requirements calling for chain sizes other than those listed on Schedule A. Accordingly, I find that all the chains sold, except those listed on Schedule A, were designed and primarily adapted for use on taxable vehicles, there being no evidence that they had any other use during such periods.

The list of sizes, forty-nine in number, for which a nontaxable use was shown, together with the amounts of taxes paid on all chains of each such size sold during each of the three taxable periods, are shown on Schedule A, which may be attached hereto and shall constitute a part of the findings herein.

The facts bearing on the computation of interest I find to be as follows: The tax on the sales of each month was paid by the plaintiff on or before the last day of the next succeeding month. The plaintiff by Exhibit 51 shows month by month the tax paid on all sizes, lumped together, of the chains sold during the taxable period. The evidence, however, contains nothing to show the month by month payment of the tax upon the numerous sizes of chains separately stated. Consequently, on the evidence, the only useful conclusion possible is that so much of the tax as was paid upon the sizes listed in Schedule A was in each case paid not later than the last day of the month following the taxable period in question.

### Conclusions of Law.

The plaintiff, on trial and on brief, has contended that some of the chains sold (forty-nine in number according to my finding) have been shown to be commonly used on nontaxable vehicles and to be equally adapted to such use, and that since in fact the only difference between such chains and the others sold by the plaintiff is a difference of size only, it must be held that all chains so sold are not "accessories for any of the articles enumerated" as taxable vehicles within the meaning of the act, and that therefore the tax upon the sale of all the chains in question was illegally assessed and collected.

The defendant, on the other hand, claims that the sales of all the plaintiff's chains

were taxable and that the plaintiff has failed to establish the burden of proof to the contrary. I believe study of the basic law will disclose that both claims are too broad.

■ The statute under which the taxes in question were exacted and paid was section 900 of the Revenue Act of 1921 (42 Stat. 291), which reads as follows:

"Sec. 900. * * * That there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold or leased—

"(1) Automobile trucks and automobile wagons (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), 3 per centum;

"(2) Other automobiles and motor cycles (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), except tractors, 5 per centum;

"(3) Tires, inner tubes, parts, or accessories for any of the articles enumerated in subdivision (1) or (2), sold to any person other than a manufacturer or producer of any of the articles enumerated in subdivision (1) or (2), 5 per centum. * * * "

The act itself thus enumerates automobile trucks, automobile wagons, other automobiles, and motorcycles as being vehicles subject to a sales tax (either of 3 per cent. or 5 per cent.) and expressly exempts tractors from the tax.

In the case of American-La France Fire Engine Co. v. Riordan (C. C. A.) 6 F.(2d) 964, it was held that fire engines and fire apparatus were not subject to the sales tax. This decision has never been overruled and must be deemed to be the law.

It will also be observed that Regulations 47, article 12, provides that self-propelling machines such as concrete mixers, stone crushers, etc., and machines which perform a mechanical function as they move along the highway, such as road graders and scrapers, sprinklers, etc., are not subject to tax.

Thus, by express provision of the act, by judicial decision, and by treasury regulations, certain types of automotive vehicles are held to be exempt from the excise tax. It is to such vehicles, of course, that I had reference when, in the findings of fact above, I used the term "nontaxable vehicles," and for brevity I shall use the phrase in the same meaning throughout this opinion. Similarly the words "taxable vehicles" will be used to denote all vehicles subject to tax under this act.

Pursuant to the authority contained in said act, the Commissioner of Internal Revenue prescribed and promulgated Regulations No. 47 (Revised December, 1921) [1] for the enforcement of the act.

At the outset it must be noted that the act does not impose a tax upon *accessories*. Instead, the tax attaches only to the sales of *"accessories for any of the articles enumerated,"* i. e., taxable vehicles. The distinction is important because the word "accessories," considered for its inherent content, is broad enough to include all articles which have some use incidental to some other element or article. Thus, if accessories be deemed a class, membership in that class is determined, not by the inherent characteristics of the article in question, but rather by its inherent relative capacity. Thus it is clear that if the word denotes a class, it is not a generic class, but rather a mis-

---

[1] "Article 16

"Art. 16. *Definition of Accessories.*—An 'accessory' for an automobile truck, automobile wagon, or other automobile, or motor cycle is any article designed to be attached to or used in connection with such vehicle to add to its utility or ornamentation and which is primarily adapted for use in connection with such vehicle, whether or not essential to its operation.

"The term 'accessories' includes, for example, automobile tops, back and side curtains, horns, speedometers, self-starters, spot lights, shock absorbers, tire pumps, pressure gauges, and hydrometers.

"Articles which have a general commercial use and which are not especially designed and peculiarly adapted for use in connection with automobile trucks, automobile wagons, other automobiles, or motor cycles are not subject to tax as 'parts' or 'accessories.' Thus a wrench or other tool of a kind ordinarily sold in hardware stores for general purposes is not subject to tax when sold separately, but if incorporated in an automobile tool kit, designed, intended, advertised, or held out for use on an automobile as distinguished from garage or shop equipment, is taxable as part of the completed kit. * * *

"Robes, goggles, and lunch kits are not subject to tax. Asbestos brake-bank linings, generator tubing, and radiator hose are not subject to tax unless sold in prepared sizes, lengths, shapes, or with such fittings as make them adapted for use only on or in connection with automobiles.

"Parts or accessories for automobile trucks, automobile wagons, other automobiles, or motorcycles primarily adapted for use on or in connection therewith when sold for any other purpose are not taxable provided the purchaser files with his order a statement that such parts or accessories are to be used on or in connection with another article of commerce not enumerated or included in subdivisions (1), (2), or (3) of Section 900. For example, a self-starter primarily adapted for use on an automobile, if sold to a manufacturer of motor boats, such manufacturer stating in his order that it is to be used in the manufacture of a motor boat and not upon an automobile, is not taxable."

cellaneous array of articles which come within the connotation of the word not because of any similarity to each other but solely because they have in common a certain capacity for association. To be sure, the word denotes objects of physical properties, but it would seem that everything in the wide domain of physics must come within the scope of the word provided always it has the capacity for association. Thus, in the case of Universal Battery Co. v. U. S., 281 U. S. 582, 50 S. Ct. 422, 74 L. Ed. 1051, the court said: "Taking the three subdivisions together, it is apparent that the words 'parts' and 'accessories' have the same meaning in all; that they comprehend articles having some relation to the enumerated motor vehicles; and that it is because of that relation that the tax is laid on their sale."

Consequently, if the act defines a class of articles for purposes of taxation, the controlling definition must be found not in the word "accessories," but rather in its objective qualification "for any of the articles enumerated in subdivision (1) or (2)"; that is, in taxable motor vehicles. And so it is that the court, in the case just referred to, said: "Thus the scheme of taxation embodied in these provisions centers around the motor vehicles enumerated therein. Their sale is the principal thing that is taxed, and the sale of parts and accessories 'for' such vehicles is taxed because the parts and accessories are within the same field with the vehicles and used to the same ends."

It results that though one article be a large or small replica of another, it does not follow that both belong to the class of *accessories for taxable vehicles*. Without any difference except of size, within the meaning of the act one article might be an accessory, another not. Thus the plaintiff could not recover the tax on all chains sold merely by proof that the chains used on certain nontaxable vehicles were identical with those used on taxable vehicles, and except for size were identical with all the other chains sold. It sustained the burden of proof only in so far as it established an actual use on nontaxable vehicles for each size of chain. In other words, such sizes as were not shown to have an actual nontaxable use were not nontaxable merely because identical except as to size with some generic class of chains. For, as we have seen, the act does not impose the tax upon a generic class.

That a showing of a common use on nontaxable vehicles was an essential part of the plaintiff's case is indicated by another expression of the court in its opinion in the Universal Battery Case, supra: "Certainly it would be unreasonable to hold that articles equally adapted to a variety of uses and commonly put to such uses, one of which is use in motor vehicles, must be classified as parts or accessories for such vehicles. And it would be also unreasonable to hold that articles can be so classified only where they are adapted solely for use in motor vehicles and are exclusively so used."

To prove a use for a chain of any given size on nontaxable vehicles, it was indispensable for the plaintiff to show that a nontaxable vehicle existed calling for that specific size of chain. The existence of the use thus established, that it was a common use might be proved by circumstantial evidence. And all chains of sizes thus proved to have an actual and common use with nontaxable vehicles were thereby shown to be commodities other than *accessories for taxable vehicles*.

Thus the contention of each party is too broad, in that it is predicated upon the proposition that the tax falls upon a generic class which must include all or none of the chains sold.

The defendant puts particular emphasis on that portion of Regulations 47, article 16, which speaks of *design* and defines an accessory as an article *"designed* to be attached to or used in connection with such vehicle or article * * *."* It is argued that since the original patents of the chain in question were applied for and issued prior to the advent of nontaxable vehicles, it necessarily follows that the chains were designed for taxable vehicles which alone were in existence when the chain was invented. The argument, I believe, involves a misconstruction of the word "design" as used in the Regulations. Clearly, the design of the manufacturer and seller—not that of the original inventor—is what the regulations intended.

Indeed, this contention on the part of the defendant, if generally applied, would lead to incongruous results. For example, if the argument is valid, a storage battery could not be taxable as an accessory because the basic patent for storage batteries preceded the automobile industry. But in the Universal Battery Case it was clearly held that storage batteries might be taxable.

Again, the defendant argues that the question of adaptability is one which can be established only by proof of duty requirements. As to this claim, it need only be said that the act, the Regulations, and all the

reported cases contain no basis for the contention. And it is well established that the question of mechanical adaptability may be shown by pragmatic evidence that the mechanism in question does in fact function. Here, there is an abundance of testimony that the identical chain used on an automobile functions equally well on a nontaxable vehicle. That the testimony is the product of actual experience as distinguished from mathematical computation does not vitiate its admissibility and, if anything, adds to its weight.

The defendant further claims that under the doctrine of "chief use," the plaintiff cannot recover. This is a doctrine developed in connection with the construction of the tariff laws, to aid in determining the membership of imported goods in the generic classes of articles subjected to tax by the statute. Its teaching is that when a certain article, by reason of its physical characteristics, may be claimed to lie within either of two classifications, its chief use shall control; and its "chief use was to be ascertained by that which was commonly, practically, and generally done." Magone v. Wiederer, 159 U. S. 555, 16 S. Ct. 122, 124, 40 L. Ed. 258.

This case of Magone v. Wiederer is cited in the Universal Battery Case, not to indicate that the old customs doctrine of chief use has application to the Revenue Act of 1921, but, I think, to indicate that even under the customs cases *exclusive* use within the field of a certain classification was not required to bring the article in question within the classification. Indeed, the greater part of the Magone opinion was devoted to this proposition.

It may, therefore, be doubted that the test of chief use has application to cases under section 900. But were it otherwise, the defendant's claim could not be sustained; for a study of the Magone Case, and especially of the judge's charge, which was expressly approved in the opinion, shows clearly that the existence of "chief use" is negatived by proof that the articles in question "have several uses to which they are perfectly applicable." And so it is that here the plaintiff, by proving that numerous sizes of chains have "several uses" (i e., use on tractors, fire apparatus, road equipment, etc.) to which they are equally adapted (and hence "perfectly applicable"), has fully negatived any possible basis which the defendant might have for claiming the applicability of this doctrine.

Obviously, the tax might have been more easily administered if the act had provided that all chains should be taxable. But since the act makes their taxability dependent upon their relation to taxable vehicles, the labor of ascertaining the existence or nonexistence of that relation, in the first instance on the part of the taxpayer and Treasury Department, and ultimately on the courts, cannot be allowed to change the effect of the act.

The defendant at the close of its case made a motion for judgment upon the grounds of a motion to dismiss which it had filed at an earlier stage in these proceedings. Judge Thomas, in an opinion on file (D. C.) 58 F.(2d) 246, treated this motion under the Connecticut practice as raising only the question of jurisdiction and, finding a presence of proper jurisdiction in this court, denied the motion. By its pending motion, the defendant thus renews its claim that the Commissioner, by section 424 of the Revenue Act of 1928 (26 USCA § 2424 and note), was given fact-finding jurisdiction to the exclusion of the courts. The motion coming at this time also fairly raises the question whether, if there be jurisdiction in the court to find the facts, the plaintiff by its evidence in this case has established facts necessary to bring it within the said section.[2]

[2] Revenue Act of 1928:
"Sec. 424. *Refund of Automobile Accessories Tax.* (a) No refund shall be made of any amount paid by or collected from any manufacturer, producer, or importer in respect of the tax imposed by subdivision (3) of section 600 of the Revenue Act of 1924, or subdivision (3) of section 900 of the Revenue Act of 1921 or of the Revenue Act of 1918, unless either—
"(1) Pursuant to a judgment of a court in an action duly begun prior to April 30, 1928; or
"(2) It is established to the satisfaction of the Commissioner that such amount was in excess of the amount properly payable upon the sale or lease of an article subject to tax, or that such amount was not collected, directly or indirectly, from the purchaser or lessee, or that such amount, although collected from the purchaser or lessee, was returned to him; or
"(3) The Commissioner certifies to the proper disbursing officer that such manufacturer, producer, or importer has filed with the Commissioner, under regulations prescribed by the Commissioner with the approval of the Secretary, a bond in such sum and with such sureties as the Commissioner deems necessary, conditioned upon the immediate repayment to the United States of such portion of the amount refunded as is not distributed by such manufacturer, producer, or importer, within six months after the date of the payment of the refund, to the persons who purchased for purposes of consumption (whether from such manufacturer, producer, importer, or from any other person) the articles in respect of which the refund is made, as evidenced by the affidavits (in such form and containing such statements as the Commissioner may prescribe) of such purchasers, and that such bond, in the case of a claim allowed after Febru-

A study of the act will disclose that this motion therefore raises, in addition to the jurisdictional question already decided, substantially the same questions as those involved in the issue, outlined above, as to whether the plaintiff itself paid these taxes for which it now seeks recovery, or whether they were collected directly or indirectly from plaintiff's customers.

On the question of jurisdiction, it may be observed that since Judge Thomas gave his opinion on the defendant's motion, the Supreme Court of the United States has said in Graham & Foster v. Goodcell, 282 U. S. 409, 51 S. Ct. 186, 191, 75 L. Ed. 415: "It is not necessary to review this analysis, for there can be no doubt that these words do have appropriate reference to action in the course of administration. But it does not follow that by the use of these words the statute is limited to such action. There is no basis for the suggestion that there were questions involved of such a character as to make it appropriate to submit them to the exclusive judgment of the Commissioner. The question was not as to the merits of the tax but simply as to the existence of certain facts of time and procedure. These facts were matters of record, easily ascertained and definite in character. It would be anomalous that the right of the taxpayer to obtain a refund from the Department, to which he was under obligation to resort (Rev. St. 3226, U. S. Code tit. 26, § 156 [26 USCA § 156]), should be denied, while the right to recover by suit the same amount under exactly the same circumstances should remain unaffected. In the attempt to explain this anomaly, it is said that the provision was inserted because of a distrust of administrative refunds. But section 611 contains no exception as to judicial proceedings, and its prohibition is one which can be enforced appropriately by the courts when the taxpayer demands relief by suit. We are brought back to the fundamental purpose of the statute, and we are unable to conclude that it established one rule for the Department and another for the courts. We think that it was intended to prevent refunds in the circumstances stated and not merely a particular way of getting the money from the Treasury; that the effect of the provision was to deny a right to recover the amount

paid and that the provision governs equally wherever the right is asserted."

In the case just referred to, it was claimed that certain provisions of the Revenue Act of 1928 dealing with "credit and refunds" and "overpayment" had application only to proceedings before the Department and not to proceedings before the court. But the reasoning of the court in holding otherwise seems to require the denial of the defendant's claim here that the effect of section 424 was to establish one rule for the Department, ousting the courts of jurisdiction.

Nor, when it has been so long and so firmly established that a taxpayer, feeling aggrieved, by appropriate action at law may have his claim heard by a court of the United States, and thus obtain a judicial determination of the very facts upon which the validity of the original assessment depended, will it be lightly held that Congress intended to make the exercise of discretion on the part of the Commissioner final without other than a departmental review. Indeed, in the "First Deficiency Act, fiscal year 1929," approved March 4, 1929 (45 Stat. 1613), in a paragraph under the heading, "Treasury Department, Bureau of Internal Revenue," Congress prescribed certain procedural limitations upon the power of the Department in respect to tax refunds, in all cases other than those in which "a suit in court or a proceeding before the Board of Tax Appeals has been or shall be instituted or payments in cases determined upon precedents established in decisions of courts, or the Board of Tax Appeals." In so far as this legislation indicates a congressional intent that the Department should follow the guidance of the courts, it impliedly negatives a legislative intent to confer on the Commissioner to the exclusion of the courts the fact-finding duty imposed by section 424. Electric Storage Battery Co. v. McCaughn (D. C.) 52 F.(2d) 205; Boyle Valve Co. v. U. S. (Ct. Cl.) 38 F.(2d) 135.

Concluding then that this court has jurisdiction, and, indeed, the responsibility of determining all questions of fact involved in section 424 of the Revenue Act of 1928 (26 USCA § 2424 and note), it becomes necessary to determine what was meant by that act. It will be observed that this act, in paragraph (b), repeals the second proviso under the heading "Internal Revenue" in section 1 of the First Deficiency Act, fiscal year 1928 (45 Stat. 30). The proviso thus repeal-

---

ary 28, 1927, was filed before the allowance of the claim by the Commissioner."

ed prohibited the refund of the automobile accessories tax unless a bond were filed by the manufacturer conditioned upon the repayment of the tax "to the persons who purchased for purposes of consumption (whether from such manufacturer * * * or from any other person)." In short, it is substantially the same as the provisions of section 424 (a) (3), Revenue Act 1928, 26 USCA § 2424 (3). Thus the proviso appeared to assume that all taxes on accessories had been and would be passed along by manufacturer and dealer to the ultimate consumer, who would necessarily be left to bear the ultimate economic burden of the tax. Obviously, the assumption was faulty, and consequently it is not surprising that a few months later Congress should have repealed this proviso and substituted therefor section 424 of the Revenue Act of 1928. This section, it will be observed, in paragraph (a), prohibits the refund of the accessory tax with three exceptions serially numbered. The first exception, clause (1), deals with actions begun prior to April 30, 1928, and consequently is not here involved. The third exception, clause (3), largely re-enacts the provisions of the proviso which we have just discussed, and fully provides for that class of cases in which the tax has been passed along to the ultimate consumer and has not been refunded to him. What is new in the section is that portion contained in paragraph (a) (2). Obviously the exception therein set forth is intended to take care of all proper cases for a refund not included in the other exceptions. And so we find the act prohibiting refunds unless the amount of the tax "was not collected, directly or indirectly, from the purchaser" or unless it had in fact already been "returned to him." In such cases obviously there was no occasion for the requirement of the bond prescribed in exception (3).

The findings in these cases, it is true, indicate that, beginning at some time in 1923, the tax in legal effect was "collected" from the purchasers. But it is also found that they did not bear the economic burden of the tax because the manufacturer itself absorbed the burden by reducing the price of the commodity by the amount of the tax. It also results that, although collected from the purchaser, the tax had been "returned to him." For the legal effect is the same whether the refund to the purchaser is made after the tax is "collected" from him, or whether it is sooner made in the form of a price reduction before it is "collected" at all.

That such a conclusion is in full accord with the legislative intent is fully apparent from the report of the Ways and Means Committee with reference to this section, the text of which is set forth in the opinion in Boyle Valve Co. v. U. S., supra. The report clearly indicates an intent to allow the refund without bond to taxpayers otherwise entitled thereto who "did not pass the tax on."

If, however, the construction indicated were deemed inadmissible and if, further, the provisions of (a)(2) of the section (section 424), separately considered, were construed to apply to the legal effect rather than the economics of the factual situation, the meaning of the several paragraphs of the section, when considered in relation to each other and in the light of its history, becomes doubtful. The ambiguity thus arising fully justifies us in looking beyond the words of the act to ascertain the legislative intent. Finding in the report of the Committee referred to a manifest intent to prohibit refunds only to those who have not borne the burden of the tax, thereby preventing unjust enrichment of the manufacturer at the expense of the consumer, a proper regard for the rules of statutory construction requires us to give effect to the true legislative intent. Holy Trinity Church v. U. S., 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; Danovitz v. U. S., 281 U. S. 389, 50 S. Ct. 344, 74 L. Ed. 923; American-La France Fire Engine Co. v. Riordan, supra. Accordingly, I hold that the plaintiff here, who has borne the burden of the tax, is not by this section precluded from recovery.

The construction which I have indicated, it may be observed, follows that adopted in the case of Boyle Valve Co. v. U. S., rather than that suggested in the Electric Storage Battery Co. v. McCaughn, which, as I understand it, would require a finding by the Commissioner as to the facts involved in the section even after a final judgment by a court of competent jurisdiction. Such a construction would seem to be at variance with the underlying principles upon which the case of Graham & Foster v. Goodcell was decided.

It thus results that the defendant's motion claiming both a lack of jurisdiction and a lack of evidence to sustain the plaintiff's burden of proof on the factual requirements of section 424 must be denied on both grounds, and the issue of fact involved must be resolved in favor of the plaintiff.

In any event, it should be noted that the burden of proof as to this issue was fully sustained by the plaintiff as to case No.

3371, dealing with a taxable period in 1922. It was not until in the midst of the ensuing period that the plaintiff adopted the practice which necessitated the foregoing discussion as to the factual requirements (distinguished from the jurisdictional implications) of section 424.

It results that the plaintiff is entitled to judgment as follows: In Case No. 3371, in the amount of $172,470.36 with interest from January 31, 1923; in case No. 3360, in the amount of $329,250 with interest from January 31, 1924; and in case No. 3421, in the amount of $98,416.41 with interest from July 31, 1924. Costs in each case to the plaintiff.

Ordered accordingly.