## MAGONE v. WIEDERER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 23. Argued January 25, 1895. — Decided November 18, 1895.

The plaintiff below imported into the port of New York in 1887 and 1888 a quantity of pieces of glass, cut in shapes to order and with bevelled edges, intended to be used in the manufacture of clocks. The collector classified them as "articles of glass, cut, engraved," etc., subject to a duty of .45 per cent *ad valorem*. The importer claimed that they were dutiable as "parts of clocks," and as such subject to a duty of 30 per cent *ad valorem;* paid the duty imposed under protest; and brought this action to recover the excess. The trial court instructed the jury

that the burden was on the plaintiff to establish that the articles were parts of clocks; that in determining that question it would not be necessary for the jury to say that they were exclusively used for that purpose; that the fact that an article chiefly used for one purpose had been used by some for a purpose for which it was not originally intended would not change its tariff nomenclature; that if the jury should find that the articles were chiefly used as parts of clocks, that that would determine their tariff classification, but on the other hand, that they must be chiefly and principally used for that purpose; that if they are articles with no distinguishing characteristic, just as applicable for use in fancy boxes or in coach lamps as they are for clocks, then it would be entirely proper to say that they have no distinguishing characteristics as parts of clocks; that they might be used for one purpose just as well as for another; and if the jury should find as to those articles, or any of them, that they have several uses to which they are perfectly applicable, then as to those articles the verdict should be for the defendant. *Held,* that the instructions were manifestly correct, and that in giving the rule of chief use, the principles by which it was to be ascertained were fully stated exactly in accordance with the law announced by this court in *Magone v. Heller,* 150 U. S. 70.

THIS was an action brought in the Circuit Court of the United States for the Southern District of New York, by the defendants in error, who were partners in business under the name of P. Wiederer & Bros., against a former collector of the port of New York, to recover alleged overpayments exacted as duties upon certain importations made in 1887 and 1888. Due protests were made against the duties charged by the collector, and from his decision timely appeals were taken to the Secretary of the Treasury. The articles in question were imported from Bremen and Hamburg, and consisted of pieces of glass, square, oblong, or round, with ground or bevelled edges, the invoices describing them as "glass unsilbert," giving their respective dimensions. All the packages except four lots were also described in the invoices as "parts of watches." The collector assessed the glass as dutiable as "articles of glass, cut," under paragraph 135 of the tariff act of March 3, 1883, c. 121, § 6, 22 Stat. 488, 496, which imposed a duty of forty-five per centum *ad valorem* upon "articles of glass, cut, engraved, painted, colored, printed, stained, silvered, or gilt, not including plate glass silvered, or looking glass plates." The importer claimed that they were dutiable either

as "parts of watches," under paragraph 494 of said act, (p. 514,) which imposed a duty of twenty-five per centum *ad valorem* upon " watches, watch-cases, watch-movements, parts of watches, and watch materials, not specially enumerated or provided for in this act;" or as "parts of clocks," under paragraph 414, (p. 511,) which laid a duty of thirty per centum *ad valorem* upon "clocks and parts of clocks." On the trial of the case, the claim that the glass was dutiable as "parts of watches" was abandoned by the importers, who insisted that they should have been assessed as "parts of clocks."

There was testimony tending to show that the glass had been ordered from a factory in Germany, some for the Ansonia Clock Company and some for the New Haven Clock Company; that the pieces had been cut and manufactured to sizes suitable for clocks; and that the edges had been ground and bevelled so as to cause the glass to be ready for fitting into the dials and frames of the clocks for which the glass had been in advance prepared — in other words, that the glass was a finished product, ready for use in clocks without any further labor or preparation whatever. There was also evidence tending to show that the particular importations in question were made in consequence of a regular course of business between the clock companies and the importer, by which the latter had regularly, during a considerable period of time, received from the clockmakers the description and measurements of the glass required for fitting into the clocks, and ordered them manufactured in accordance therewith. There was also evidence tending to show that the glass of which the pieces were made was French window glass of a good quality, and that pieces of glass like those in question were chiefly and generally used as parts of clocks. On behalf of the collector, there was evidence tending to show that pieces of glass like those imported were sometimes used by the manufacturers of hand mirrors, by carriage manufacturers, by photographers, by perfumers, by makers of lamps, and for other objects. The evidence tended to show not that the exact size of glass covered by the invoices were used for the purposes named, but that pieces of glass of the general form of

those imported were thus used when cut to the sizes required. for other purposes. There was conflict in the testimony as to whether pieces made from window glass were ever used other than for clocks; some of the witnesses saying that the glass used for such other purposes was plate glass and not window glass, whilst others testified that both pieces made of plate and window glass were used for the other purposes above indicated. The court below, after instructing the jury that the burden was upon the plaintiff to establish by a preponderance of evidence that the articles were parts of clocks, laid down the following rule by which they were to determine whether the glass was to be so considered:

"In determining this question, whether or not these articles are parts of clocks, it will not be necessary for you to say that they were exclusively used for that purpose. An article may be chiefly used for a certain purpose and be diverted from its principal use; somebody may put it to a purpose for which it was not originally intended. That could not, in my judgment, change its tariff nomenclature. The Supreme Court, in a case which I think is somewhat similar upon the facts, although relating to different sections of the statute, sustained a charge to the jury 'that the use to which the articles were chiefly adapted and for which they were used determined their character within the meaning of the statute. . . .' And so I will say to you, as the law of the case, as I understand it, that if you find that these articles were chiefly used as parts of clocks, that would determine their tariff classification. But it is entirely clear, upon the other hand, that they must be chiefly and principally used for that purpose. If they are articles, all, or one or more, as the case may be, which have no distinguishing characteristic, which are just as applicable for use in fancy boxes or in coach lamps as they are for clocks, just as applicable to the one use as to the other, then it would be entirely proper to say that they have no distinguishing characteristics as parts of clocks. They might be used for one purpose just as well as for another. And if you find as to those articles, or any of them, that they have several uses to which they are perfectly applicable, then as to those articles your verdict should be for the defendant."

The defendant excepted to so much of the charge as stated that " the principal or chief use of the articles would determine their tariff classification." He, moreover, excepted to the refusal of the court to give five separate charges by him presented. The first, fourth, and fifth of these charges substantially asked that the jury be instructed to find in favor of the defendant, unless the proof showed that the pieces of glass in controversy were used absolutely and exclusively for clocks, and for no other purpose. The second and third requests asked for an instruction in favor of the defendant, unless the proof showed that the articles imported were used in trade exclusively as parts of clocks or parts of watches, or were used in trade and commerce solely as parts of clocks.

Verdict and judgment thereon for plaintiffs, to review which this writ of error was brought.

*Mr. Assistant Attorney General Whitney* for plaintiff in error.

*Mr. Edward Hartley,* (with whom was *Mr. Walter H. Coleman* on the brief,) for defendant in error.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

The instructions which were refused asked the court to rule that exclusive use was the correct criterion to determine the classification. The error of this contention seems obvious from the most casual consideration. If exclusive use were made the test, then an exception would destroy the rule ; for however general and universal the use of a particular article might be, if exceptionally used for another purpose, such use would destroy the effect of the general and common use, and make the exception the controlling factor. It is urged that if exclusive use is not made the criterion it will be impossible to assess duties, because of the difficulty of ascertaining the chief or general and common use; but it is manifest that this argument of inconvenience is a mistaken one, and that, on the contrary, it would be impossible to resort to use as a criterion

of classification if exclusive use must be ascertained in so do-
ing, for that which is generally and commonly done may be
known, but that which is so universally done as to be without
any exception is difficult, if not impossible, of ascertainment.

The strength of this reasoning has caused counsel, in the
discussion at bar, to admit that the correct standard is not ex-
clusive use, which was presented in the first, fourth, and fifth
request to charge, but that such test is to be found in the exclu-
sive commercial use which was embraced in the second and
third requests. The proposition involves a distinction without
a difference. How the line can be drawn between exclusive
use and exclusive commercial use, in trade or commerce, is im-
possible of statement. Indeed, this difficulty is likewise so
apparent that in defending the proposition of exclusive com-
mercial use it is defined in the argument to be "known in com-
merce," but known in commerce is a matter of commercial
designation, not of commercial use. Thus it is impossible to
state the proposition of exclusive use without being driven by
the reason of things to abandon it and seek refuge in the the-
ory of exclusive commercial use, or exclusively used in trade
or commerce. It is equally impossible to state this last con-
tention without resolving it into a question of commercial des-
ignation. The decisions of this court abundantly support the
refusal to give the charges asked. *Hartranft* v. *Langfeld*,
125 U. S. 128; *Robertson* v. *Edelhoff*, 132 U. S. 614; *Cadwal-
ader* v. *Wanamaker*, 149 U. S. 532; *Walker* v. *Seeberger*, 149
U. S. 541; *Hartranft* v. *Meyer*, 149 U. S. 544; *Magone* v.
*Heller*, 150 U. S. 70; *Sonn* v. *Magone*, 159 U. S. 417. It is
urged that *Worthington* v. *Robbins*, 139 U. S. 337, and *Magone*
v. *Heller* (*ub. sup.*) are in conflict with the other cases above
quoted, and therefore such other cases by implication are over-
ruled. The contention is without foundation. It proceeds
upon the hypothesis that this court overruled, in 139 U. S.,
*Hartranft* v. *Langfeld* and *Robertson* v. *Edelhoff*, when, in
149 U. S., in *Cadwalader* v. *Wanamaker*, *Walker* v. *Seeberger*,
and in *Hartranft* v. *Meyer*, it affirmed those cases, and held
itself bound by the doctrine of chief use which was there an-
nounced. So, also, it presupposes that this court, in *Magone*

v. *Heller*, in 150 U. S., reversed the doctrine established in a line of carefully considered cases without even making reference to them. It is apparent that the matters decided in *Worthington* v. *Robbins* and *Magone* v. *Heller* do not conflict with the adjudications of this court, as to the chief or predominant use, which began with the case of *Maillard* v. *Lawrence*, 16 How. 251, 261, and has found fuller expression in the line of cases above referred to.

*Worthington* v. *Robbins* involved the rate of duty on a certain class of enamel, which it was claimed by the importer was dutiable as watch materials. The court found that the enamel was a raw material, not necessarily material for a watch at all, and not susceptible of being used as such without undergoing a process of manufacture. It was upon this ground the case was decided. *Magone* v. *Heller* involved the duty on an article invoiced as "manure salts" which the collector claimed was dutiable as sulphate of potash at 20 per cent *ad valorem*, and which the importer asserted was free of duty as a substance "expressly used for manure." The proof showed that salts like those in question were used for making fertilizers, that they were sometimes sold to farmers for fertilizing purposes, and that they were also used for making alum, nitrate of potash, and bichromate of potash. In this state of proof the defendant, collector, requested, under the theory of exclusive use, a verdict in his favor, which the court refused, but on the request of the plaintiff instructed a verdict in his behalf. We held that the court rightly refused the instruction for the defendant, which was necessarily an adhesion to the settled doctrine that where use becomes the criterion, exclusive use was not the proper test to apply. We held also that there was error in instructing for the plaintiff, because the question of whether there was chief or predominant use of the imported article as a substance "expressly used for manure," should have been left to the jury, and the case was remanded for that reason. In reviewing the contention we said: "If the only common use of a substance is to be made into manure, or to be itself spread upon the land as manure, the fact that occasionally or by way of experiment it is used for a different

purpose will not take it out of the exception. But if it is commonly, practically, and profitably used for a different purpose, it cannot be considered as used expressly for manure, even if in the majority of instances it is so used." It follows that whilst *Magone* v. *Heller* adhered to the settled rule of chief use, a guide was there announced by which to discover whether the facts established such chief use. Chief use in itself is a vague and uncertain term. *Magone* v. *Heller*, therefore, held that chief use was to be ascertained by that which was commonly, practically, and generally done, and was not to be overthrown by an occasional exception for practical or experimental purposes. Thus, we repeat, *Magone* v. *Heller*, whilst enforcing and applying the rule of chief use, furnished the instrument for determining and measuring its operation and giving certainty to its application. It is for this reason that in the recent case of *Sonn et al.* v. *Magone*, 159 U. S. 417, *Magone* v. *Heller* was cited as authority for and in elucidation of the correct test by which use as a measure of classification was to be controlled. The charge given by the court below, and which was excepted to, was manifestly correct, for in giving the rule of chief use the principles by which chief use was to be ascertained were fully stated exactly in accordance with the law subsequently announced by this court in *Magone* v. *Heller*.

*Affirmed.*