## W. M. DUTTON & SONS CO. v. UNITED STATES.

### No. H–397.

Court of Claims.

June 6, 1932.

Modifying opinion 48 F.(2d) 454.

The plaintiff sues to recover the sum of $97,841.87, which amount was paid under the provisions of section 900 of the Revenue Act of 1918 (40 Stat. 1122) and similar provisions of the Revenue Acts of 1921 (42 Stat. 291) and 1924 (26 USCA § 881 note). The taxes were assessed on the sales of air pumps manufactured by plaintiff during the period from March 1, 1919, to February 28, 1926.

The issue involved is whether or not the air pumps in question constitute "parts" or "accessories" for automobiles within the meaning of the statute.

This case having been heard by the Court of Claims, the court, upon the report of a commissioner and the evidence, makes the following special findings of fact:

1. Plaintiff is now and has been since July, 1920, a corporation organized and doing business under the laws of the state of Nebraska, with its office and principal place of business in Hastings, in the state of Nebraska. Prior to that time, to wit, from 1892 until 1913, the business in which plaintiff is engaged was conducted by Frank Rose as an individual. From 1913 to 1920 the said business was conducted by J. H. Haney & Company under an exclusive license. In January, 1920, J. H. Haney & Company was changed to the W. M. Dutton & Sons Company, a partnership, to whose business the plaintiff succeeded in July, 1920.

2. Plaintiff and its predecessors were during all the times hereinafter mentioned, as well as for many years prior thereto, engaged in the manufacture, sale and distribution, among other articles, of air pumps. In previous years the pumps manufactured by plaintiff were designed for the purpose of inflating bicycle tires and were generally used for such purposes. All of the pumps manufactured by plaintiff were fitted with a connection for use on the universal air valve manufactured by A. Schrader's Son, Inc., which company has for many years manufactured and supplied 85 per cent. of the valves used in pneumatic tires of all kinds.

Until about 1900, when the manufacture of bicycles reached its peak, the pumps were used chiefly for inflating bicycle tires. Since that time, and especially during the years 1919 to 1926, inclusive, the pumps manufactured, sold, and distributed by plaintiff were adapted and actually used for many purposes, among which are the following: Inflating of all kinds of pneumatic tires, such as those used on automobiles, bicycles, motorcycles, airplanes, sulkies, etc.; furnishing air

pressure in gasoline and kerosene heating and cooking stoves, grates, and lighting systems; spraying equipment, chemical sprays for trees and paint-spraying machines; testing of fuses and switch boxes in electrical work; in gasoline torches for brazing; in draught-beverage containers; in outdoor athletic equipment, such as footballs, basket balls, air boats, air beds, etc.; air pillows, chest protectors, mask protectors, metal air tanks, and air containers for vulcanizing.

3. The principle of the pumps manufactured, sold, and distributed by plaintiff is the same as that of the air pumps manufactured by plaintiff's predecessor as early as 1892 and in common use for more than thirty years before the advent of automobiles. At all times all of the pumps have been equipped with a standard fitting or coupling making them adaptable for any and all of the purposes enumerated in Finding 2 hereof.

4. Plaintiff manufactured during the taxable years three air pumps known and designated as the "Rose Pump," the "Daisy Pump," and the "Balloon Pump." These pumps, while varying in size of barrel, were operated on the same principle, used exactly the same connection, and were usable on the same air valve.

The air pumps manufactured by plaintiff were designed for the general purposes indicated in Finding 2, and none was primarily designed or specially adapted for use in connection with automobiles.

The design of the original bicycle pump, manufactured by plaintiff and by plaintiff's predecessor in business, was never changed. Plaintiff never at any time advertised any of the pumps as adaptable for automobile use. However, the Daisy pump was advertised in a catalogue issued by plaintiff's predecessor in the year 1919 as especially attractive to dealers in secondhand automobiles because of the fact that it was slightly smaller than the Rose pump and retailed for 50 cents against the price of $1.25 for the Rose pump. The Balloon pump was larger and retailed for $1.75.

5. During the years 1919 to 1926, inclusive, as well as at all other times since plaintiff began the manufacture of air pumps, it sold its pumps to jobbers only and has never at any time specified the purpose for which the pumps were to be used, and had no knowledge when it supplied an order for what purpose the pumps sold were to be used. The jobbers sold the pumps to retailers and the retailers sold them to any one who desired to buy the same. It does not appear from the evidence in the record how many of the pumps manufactured by the plaintiff, if any, were sold by the retailers to individual owners of automobiles. At no time did plaintiff sell pumps to manufacturers of automobiles.

6. Between February 1, 1919, and March 3, 1926, plaintiff paid to the collector of internal revenue at Omaha, Neb., excise taxes on air pumps and other articles in the sum of $109,583.80. Of this amount, $29,572.02 was paid on air pumps subsequent to October 11, 1922.

7. On September 5, 1923, plaintiff filed its claim for refund No. 314383 of manufacturer's excise tax paid on air pumps for the period March, 1919, to June, 1923, inclusive, in the sum of $78,835.53, which claim was rejected by the Commissioner of Internal Revenue on March 7, 1924.

On August 25, 1925, plaintiff filed its claim for refund of manufacturer's excise tax paid on air pumps for the period August, 1923, to April, 1925, in the amount of $13,-200.24, which claim was rejected by the Commissioner of Internal Revenue on January 7, 1926.

On March 5, 1927, plaintiff filed its claim for refund of manufacturer's excise tax paid on air pumps and other articles for the period May, 1925, to February, 1926, in the amount of $5,806.10 ($5,470.17 paid on air pumps and $335.93 paid on automobile side curtains and top covers), which claim was rejected by the Commissioner of Internal Revenue on July 23, 1927.

The total amount paid subsequent to October 11, 1922, for which claims for refund were made, was $29,572.02.

F. W. McReynolds, of Washington, D. C., for plaintiff.

R. C. Williamson, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

Plaintiff sues for recovery of excise taxes assessed on sales of air pumps during the period from March 1, 1919, to February 28, 1926, under section 900 of the Revenue Act of February 24, 1919, 40 Stat. 1122 (and similar provisions of the acts of 1921 and 1924).

Sections 900 (3) of the Internal Revenue Acts of 1918 (40 Stat. 1122) and 1921 (42 Stat. 291), and section 600 (3) of the act of 1924 (26 USCA § 881 note), provide for excise taxes on "tires, inner tubes, parts, or accessories" of automobiles or motor cycles "sold to any person other than a manufacturer or producer" of automobiles or motor cycles.

The question as to what constitutes "parts" and "accessories" in automobiles within the meaning of the Revenue Acts of 1918, 1921, and 1924 has been passed upon by this court in numerous cases. In Atwater Kent Manufacturing Co. v. United States, 62 Ct. Cl. 419, 425, the court said: "Where the articles, as those we are concerned with, are applicable for use in different kinds of machines or appliances and are just as applicable to the one use as to the other they are not distinctively parts of automobiles so as to be taxable under these statutes."

The rule announced in the Atwater Kent Mfg. Co. Case, supra, is followed in Cole Storage Battery Co. v. United States, 65 Ct. Cl. 164; Walker Manufacturing Co. v. United States, 65 Ct. Cl. 394; Fairmount Tool & Forging Co. v. United States, 42 F.(2d) 591, 70 Ct. Cl. 425, and other cases.

In Universal Battery Co. v. United States, 281 U. S. 580, 583, 50 S. Ct. 422, 423, 74 L. Ed. 1051, the court said:

"The administrative regulations issued under section 900 uniformly have construed the term 'part' in that section as meaning any article designed or manufactured for the special purpose of being used as, or to replace, a component part of such vehicle, and which by reason of some characteristic is not such a commercial article as ordinarily would be sold for general use, but is primarily adapted for use as a component part of such vehicle. The regulations also have construed the term 'accessory' as meaning any article designed to be used in connection with such vehicle to add to its utility or ornamentation and which is primarily adapted for such use, whether or not essential to the operation of the vehicle.

"This construction of those terms has been adhered to in the Internal Revenue Bureau for about ten years, and it ought not to be disturbed now unless it be plainly wrong. We think it is not so, but is an admissible construction. Certainly it would be unreasonable to hold that articles equally adapted to a variety of uses and commonly put to such uses, one of which is use in motor vehicles, must be classified as parts or accessories for such vehicles. And it would be also unreasonable to hold that articles can be so classified only where they are adapted solely for use in motor vehicles and are exclusively so used. Magone v. Wiederer, 159 U. S. 555, 559, 16 S. Ct. 122, 40 L. Ed. 258. We think the view taken in the administrative regulations is reasonable and should be upheld. It is that articles primarily adapted for use in motor vehicles are to be regarded as parts or accessories of such vehicles, even though there has been some other use of the articles for which they are not so well adapted."

The air pumps involved were sold by the plaintiff to jobbers only, who in turn sold them to retailers through whom they were distributed to the ultimate consumer. While they could be and were used in connection with automobiles, they were not primarily adapted for that purpose, and in fact were used for a large variety of purposes such as inflating all kinds of pneumatic tires used on bicycles, motorcycles, airplanes, and sulkies; furnishing air pressure in gasoline and kerosene heating and cooking stoves, grates, and lighting systems; spraying equipment, chemical sprays for trees and paint-spraying machines; testing of fuses and switch boxes in electrical work; in gasoline torches for brazing; in draught-beverage containers; in outdoor athletic equipment, such as footballs, basket balls, air boats, air beds, air pillows, chest protectors, mask protectors, metal air tanks, and air containers for vulcanizing.

Under the uniform decisions of this court, and the decision of the Supreme Court in Universal Battery Co. Case, supra, the articles in question being equally adapted to a variety of uses, and commonly put to such uses, one of which is use in motor vehicles, cannot be considered as primarily adapted for use in motor vehicles. The plaintiff is therefore entitled to recover the amount of taxes paid by it since October 11, 1922, for which claims for refund were made. Taxes paid prior to that date are barred by the statute of limitations. The plaintiff is awarded judgment in the sum of $29,572.02 with interest. It is so ordered.