## ROUTZAHN, Collector of Internal Revenue, v. WILLARD STORAGE BATTERY CO.

### No. 6181.

Circuit Court of Appeals, Sixth Circuit.

May 9, 1933.

E. F. McMahon, of Washington, D. C. (W. J. Mahon and John B. Osmun, both of Cleveland, Ohio, and C. M. Charest, of Washington, D. C., on the brief), for petitioner.

C. C. Norris, Jr., of Philadelphia, Pa. (Philip Dechert, of Philadelphia, Pa., Walter T. Kinder and F. C. Friend, both of Cleveland, Ohio, and A: B. Stoughton, of Philadelphia, Pa., on the brief), for respondent.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The suit below was for the recovery of manufacturers' excise tax paid on the manufacture and sale of electric storage batteries, and collected under the provisions of sections 900 (3) of the Revenue Act of 1921 (42 Stat. 291), and 600 (3) of the Revenue Act of 1924 (26 USCA § 881 note). The taxpayer obtained judgment, and the collector appeals.

Two questions are presented: (1) Are the taxpayer's storage batteries "parts and accessories" of automotive vehicles within the meaning of the applicable statutes and the regulations of the Commissioner of Internal Revenue? (2) Does section 424 (a) of the Revenue Act of 1928 (26 USCA § 2424) deprive the United States courts in a suit against the collector of jurisdiction to determine whether the taxes here involved were erroneously and illegally assessed and collected, and vest the determination of such question exclusively in the commissioner?

Section 900 of the 1921 Act (42 Stat. 291) is printed in the margin.[1] So far as the issues in this case are involved, section 600 of the 1924 Act (26 USCA § 881 note) is the same, and both are identical with the corresponding section of the Revenue Act of 1918 (40 Stat. 1122, § 900), which was the first act imposing the excise tax here in question. Section 900 has been construed by the Supreme Court in Universal Battery Co. v. United States, 281 U. S. 580, 50 S. Ct. 422, 423, 74 L. Ed. 1051, to the effect that subdivisions 1 and 2 thereof, with the introductory provision, contemplate that parts and accessories may be sold along with the vehicle by the manufacturer of the latter, and where this is done the tax is to be paid by the manufacturer of the vehicle. Subdivision 3, with the introductory provision, contemplates that parts and accessories may be sold separately from the vehicle by the manufacturer of the former to others than a manufacturer of the latter, and the tax on such sales is to be paid by the manufacturer of the parts and accessories. We are here concerned only with taxes assessed and collected upon sales by the taxpayer to others than the manufacturers of automotive vehicles, since sales by the taxpayer to such manufacturers are tax free, and it is only resale by the latter that is taxed.

The administrative regulations issued under section 900 have construed the term "parts" therein as meaning any articles designed or manufactured for the special purpose of being used as, or to replace, component parts of such vehicle, and which by reason of some characteristic are not such commercial articles as ordinarily would be sold for general use, but are primarily adapted for use as component parts of such vehicle. They have also construed the term "accessories" as meaning any articles designed to be used in connection with such vehicle to add to its utility or ornamentation, and which

are primarily adapted for such use whether or not essential to the operation of the vehicle. In the Universal Battery Case, supra, the court held such construction to be admissible, saying: "Certainly it would be unreasonable to hold that articles equally adapted to a variety of uses and commonly put to such uses, one of which is use in motor vehicles, must be classified as parts or accessories for such vehicles. And it would be also unreasonable to hold that articles can be so classified only where they are adapted solely for use in motor vehicles and are exclusively so used. Magone v. Wiederer, 159 U. S. 555, 559, 16 S. Ct. 122, 40 L. Ed. 258. We think the view taken in the administrative regulations is reasonable and should be upheld. It is that articles primarily adapted for use in motor vehicles are to be regarded as parts or accessories of such vehicles, even though there has been some other use of the articles for which they are not so well adapted."

Of vital significance is the application made by the Supreme Court of its rule of construction to the issues involved in the five cases disposed of by its single opinion in the above case. In No. 127 the District Court found that the storage batteries there involved had been for several years used in motor vehicles, but made no finding as to whether they were primarily adapted for such use, or were equally adapted for other uses. This was a material issue. The case was reversed, and remanded for complete findings. In No. 275 storage batteries were likewise involved. The District Court made a special finding that they were of a type specially suitable for use on automobiles as replacements, and were not adapted to any other primary purpose or use. Judgment was affirmed. In No. 350 the tax was on sales of gascolaters, devices used on internal combustion engines to strain dirt, water, and foreign matter from the gasoline. The petition alleged that such devices were not parts or accessories of motor vehicles, but commercial articles sold for general use. This was a material issue, to which the findings made no definite response. Judgment was reversed, and the case remanded for complete findings. In No. 351 the tax was on replacement parts for speedometers. It was conceded that speedometers are accessories. It was found by the District Court that the parts were specially designed, manufactured, and sold for use on automobiles, and were not adapted to any other purpose or use. Judgment was affirmed. In No. 352 the tax was laid on brackets and fittings for auto-

[1] "That from and after January 1, 1922, there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold or leased—

"(1) Automobile trucks and automobile wagons (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), 3 per centum;

"(2) Other automobiles and motor cycles (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), except tractors, 5 per centum;

"(3) Tires, inner tubes, parts, or accessories for any of the articles enumerated in subdivision (1) or (2), sold to any person other than a manufacturer or producer of any of the articles enumerated in subdivision (1) or (2), 5 per centum."

mobile bumpers. They were designed, manufactured, and sold for such use, and were not adapted for any other. The judgment was affirmed.

In the light of· the construction placed upon the statutes and regulations by the Supreme Court, and the manner of its application to specific issues involved, we come to the consideration of the instant case. The District Judge found that the taxpayer and its predecessors had been in the business of manufacturing storage batteries since 1896; that its batteries, prior to their use on automobiles, were commercial commodities widely, generally and commonly sold for many different ˙uses; that the first of its storage batteries that were purchased for use on automobiles were the same in all essential respects as the batteries which had been commonly and widely used for a number of years for other purposes; that the automobile manufacturer adjusted the space in his automobile to fit the storage battery; that the storage battery was not designed specially for use on the automobile; that the parts of the storage batteries upon which the taxes in suit were paid were much the same as the parts of batteries manufactured by the predecessors of the plaintiff in 1895 or 1899, and that the only changes were those naturally due to refinement in the art of manufacture, and to competition in price; that none of these refinements made the batteries peculiarly adaptable for use only on automobiles, but that they continued to be equally adaptable for other uses where the duty requirements were the same; that the batteries manufactured by the taxpayer, and upon which the taxes in suit were paid, were commercial commodities which were commonly, generally and widely manufactured and sold for a great many different purposes; that there were no peculiar characteristics of such batteries which rendered them not such commercial articles as would ordinarily be sold for general use for a great many different purposes; that the uses of such electric batteries other than their use on automobiles were not incidental to their use on automobiles; that they were not peculiarly adaptable only for automobiles, but were equally well adaptable for use in stationary engines, marine engines, tractors, radios, and for a great many other purposes where the duty required was the same, and that they were so used; that they were not primarily adaptable for use only on automobiles, but were interchangeable for use in connection with automobiles, and with many other devices; that they were de-

signed for use in all fields in which electricity in portable form was required; that the duty requirement for use in automobiles was also required in various other uses; and that the batteries which were applied to these other uses were identical in design with the batteries used in connection with automobiles, and that such batteries were just as applicable for one use as for another where the duty requirement was the same.

■ Having found the facts as recited, the District Judge came to the legal conclusion that the articles upon the sale of which taxes here involved were collected, are not parts or accessories of automotive vehicles within section 900 of the 1921 Act, or section 600 of the 1924 Act, and that the taxes were illegally assessed and collected. There remains for us only the inquiry as to whether the evidence supports the findings, and the findings the judgment. United States v. United States Fidelity & G. Co., 236 U. S. 512, 527, 35 ˙S. Ct. 298, 59 L. Ed. 696; Dooley v. Pease, 180 U. S. 126, 21 S. Ct. 329, 45 L. Ed. 457; Philadelphia & Reading Co. v. United States, 247 F. 466 (C. C. A. 3).

■ In support of its contention that storage batteries of the type here involved were in wide commercial use prior to the development of the automobile, that they were not designed primarily for use in automotive vehicles, and that they are to-day widely sold for a great variety of uses to which they are as well adapted as to use in automobiles, the taxpayer marshaled a great wealth of evidence. In answer the collector produced none. He relies solely upon responses drawn from the taxpayer's witnesses, and on the inferences to be drawn therefrom. It would be idle for this court to attempt an analysis of the evidence presented by the somewhat substantial record. It is sufficient to say that we have given it careful consideration, and that it sustains the findings of the District Judge.

It may be important, however, to note that while storage batteries had a somewhat wide use as early as 1880, their modern development began about 1893, when they were in use for train lighting, traction batteries, and railway signals. Later they came into use for carriage lighting, telephone, telegraph, and ignition in gas engines. In 1908 they began to be used for automobile lighting, but it was not until 1911 that Dr. Kettering applied the storage battery to the automobile for the combined purpose of starting, lighting, and ignition, and it is significant that he selected a standard battery in

use for railway signal work for that purpose. It is also important to note that the catalogue of Willard storage batteries issued by Sipe and Sigler, the taxpayer's predecessors, in 1901, listed a great many uses for their commercial batteries other than for use in connection with automobiles. Likewise, the testimony shows that storage batteries equally applicable to automobiles, and upon which the taxes in suit were paid, were used from 1922 until 1926, the taxable period here involved, for some eighty or more different purposes, each unconnected or unrelated to use on automobiles. It seems to us no answer to this evidence to say that a battery of the size and power to meet the requirements of a given automobile is primarily adapted for use with such automobile when the evidence is so conclusive that the size and type of battery furnished to purchasers is determined not by the manner or place of use, but by its duty requirements.

■ Giving due consideration to the rule that the burden is on the taxpayer to prove all of the facts establishing the invalidity of the tax, United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; Metcalf & Eddy v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384; Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184, we are of the opinion that the findings of the District Court are in response to the evidence, and we agree with its conclusion that the taxpayer's product, upon the sales of which the disputed taxes were assessed and collected, are not automobile parts and accessories within the meaning of the applicable statutes and regulations. We thus find ourselves in accord with the majority of the Court of Appeals for the Third Circuit upon identical issues in Blakely D. McCaughn, Collector, v. Electric Storage Battery Co., 63 F.(2d) 715, decided January 31, 1933. We find nothing in the opinion of the Court of the Second Circuit in Robert O. Eaton, Collector, v. American Chain Co., 63 F.(2d) 783, decided March 7, 1933, to persuade us otherwise. The articles on which alleged erroneous taxes were assessed in the latter case were "Weed Chains." There was no showing that the specific chains sold, and for which the tax was imposed, were designed and primarily adapted for any other specific use than that on automobiles. Moreover, the development of tire chains followed the development and general use of the automobile, and was in response to a need presented by it. Finally, "Weed Chains" are articles covered by United States patent, and the patent clearly specifies them as primar-

ily useful on automobiles to prevent skidding. It may well have been thought that the description and specification of the patent, without more, are conclusive on the question of their primary adaptability. See, also, Philadelphia Storage Battery Co. v. Lederer (D. C.) 21 F.(2d) 320; General Lead Batteries Co. v. United States (Ct. Cl.) 60 F.(2d) 177.

■ We come then to the second question to be decided: Is recovery barred by section 424 (a) of the Revenue Act of 1928 (26 USCA § 2424), printed in the margin?[2] The collector's contention is that this section ousts the jurisdiction of the court to determine whether taxes have been illegally assessed and collected in a suit not begun prior to April 30, 1928, and vests such jurisdiction exclusively in the Commissioner of Internal Revenue. It has long been established that taxpayers have a common-law right recognized by statute to sue the collector in a court of the United States for the recovery of taxes wrongfully collected. This is conceded by the collector. Such actions are personal in their nature, equitable in character, and are as for money had and received. Duffin v. Lucas, 55 F.(2d) 786, 792 (C. C. A. 6); Sage v. United States, 250 U. S. 33, 37, 39 S. Ct. 415, 63 L. Ed. 828. When the suit is begun it cannot be known with certainty that the judgment will be paid out of the treasury. That depends upon the certificate of the court in the case. Smietanka v. Indiana Steel Co., 257 U. S. 1, 5, 42 S. Ct. 1, 66 L. Ed. 99. It is true that in this instance the certificate has been made, but the intended scope of the action, as in the Smietanka Case, must be judged by its possibilities under the statutes that deal with it. To give effect to the collector's contention would be to hold that section 424 (45 Stat. 866) not only repeals as to suits for recovery of such

---

[2] "No refund shall be made of any amount * * * collected from any manufacturer [of parts for automobiles] * * * unless either—

"(1) Pursuant to a judgment of a court in an action duly begun prior to April 30, 1928; or

"(2) It is established to the satisfaction of the Commissioner that such amount was in excess of the amount properly payable upon the sale or lease of an article subject to tax, or that such amount was not collected, directly or indirectly, from the purchaser or lessee, or that such amount, although collected from the purchaser or lessee, was returned to him; or

"(3) The Commissioner certifies to the proper disbursing officer that such manufacturer * * * has filed * * * a bond * * * conditioned upon the immediate repayment to the United States of such portion of the amount refunded as is not distributed by such manufacturer, * * * within six months after the date of the payment of the refund, to the persons who purchased * * * the articles in respect of which the refund is made. * * * *"

taxes as are here involved, begun after April 30, 1928, all of the statutes which recognize the taxpayer's right to sue the collector, but destroys the right itself. If such were the intention of the Congress, it has fallen far short of expressing it. Section 424 (a) deals not with rights of action, but with limitations upon the power of the commissioner to make refunds. Its provisions are not in conflict with the general provisions of law authorizing suits for refund of taxes. Boyle Valve Co. v. United States (Ct. Cl.) 38 F.(2d) 135; American Chain Co. v. Eaton (D. C.) 58 F. (2d) 248, reversed on other grounds in Eaton, Collector, v. American Chain Co., supra; Electric Storage Battery Co. v. Mc-Caughn (D. C.) 52 F.(2d) 205, affirmed by McCaughn, Collector, v. Electric Storage Battery Co., supra.

We agree with the authorities above cited, not only in reliance upon familiar principles governing repeal by implication, but also because the section appears to us to have an obvious literal meaning perfectly applicable to refunds by the commissioner after judicial determination of the legality of the tax. Article 1255, Regulations of the Treasury No. 74 (1928), provides for the filing of claims for refund in cases where judgment is obtained against the collector. To such claims must be annexed inter alia a certified copy of the final judgment and a certificate of probable cause. They must not be confounded with claims for refund under section 3226, R. S., as amended (26 USCA § 156), as a prerequisite to the bringing of suit either in the Court of Claims against the United States, or in the District Court against the collector. Until claim for refund under Regulation 74 is made there is no occasion for administrative decision thereunder. When, however, final administrative determination is invoked, the mandate of section 424 (a) forbids the refund unless the taxpayer, can bring himself within the provisions of paragraphs 1, 2, or 3. If the claim for refund is made pursuant to a judgment of the court in an action begun prior to April 30, 1928, the commissioner is not forbidden to refund under the applicable statute, and this may well be without qualification, although this we are not required to decide. Failing to bring himself within the condition of paragraph 1, because of not having pursued his claim to judgment in an action begun prior to the critical date, the taxpayer must (2) establish to the satisfaction of the commissioner (a) that the amount claimed was in excess of the amount properly payable upon the sale of the article subject to tax, (b) that such amount was not collected directly or indirectly from the purchasers, or (c) that such amount, although collected from the purchasers, was returned to them. Failing in bringing himself within the provisions of paragraph 2, the taxpayer must under paragraph 3 file a bond conditioned upon his repayment to the purchasers such amount of the tax as has not been distributed, and secure certification by the commissioner to the proper disbursing officer that such bond has been filed. Whether or not there can be judicial review of decisions by the commissioner in the event that he acts arbitrarily or through caprice, we are not in this case called upon to decide. Reading the section literally, however, with the alternative provisions of its several paragraphs in mind, the purpose of the Congress to prevent the manufacturer from enriching himself by recovery of a tax that he has himself not paid, but has passed on to the consumer, appears in bold relief. It is also clear from the legislative record of the section.

It follows from what we have said that the judgment of the court below must be affirmed.

So ordered.