UNITED STATES LIGHT & HEAT CORPO-
RATION v. UNITED STATES (three
cases).
Nos. F–247, F–253, H–460.

Court of Claims.
June 5, 1933.

George M. Morris, of Washington, D. C. (Harry C. Kinne, of Chicago, Ill., and Kix-Miller, Baar & Morris, of Washington, D. C., on the brief), for plaintiff.

Ralph C. Williamson and W. W. Scott, both of Washington, D. C., for the United States.

Before GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff, in three separate suits, Nos. F-247, F-253, and H-460, seeks to recover excise taxes paid upon the sales of storage batteries and storage battery parts. The taxes were imposed and collected under the provisions of sections 900 of the Revenue Acts of 1918 and 1921, c. 18, 40 Stat. 1122; c. 136, 42 Stat. 291, and section 600 of the Revenue Act of 1924, c. 234, 43 Stat. 253 (26 USCA §§ 881 note, 882).

Sections 900 of the acts of 1918 and 1921 are identical, and read as follows:

"That there shall be levied, assessed, collected, and paid upon the following articles sold or leased by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold or leased—

"(1) Automobile trucks and automobile wagons, (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), 3 per centum;

"(2) Other automobiles and motorcycles, (including tires, inner tubes, parts, and accessories therefor, sold on or in connection therewith or with the sale thereof), except tractors, 5 per centum;

"(3) Tires, inner tubes, parts, or accessories, for any of the articles enumerated in subdivision (1) or (2), sold to any person other than a manufacturer or producer of any of the articles enumerated in subdivision (1) or (2), 5 per centum."

The material provisions of section 600 of the Revenue Act of 1924 are substantially the same as section 900 of the two preceding acts, except that the rate of tax in subdivision (3) is 2½ per cent. instead of 5 per cent.

The essential facts in the three cases are the same, differing only in respect to the periods involved and the technical status of the claims for refund, and their disallowance by the Commissioner of Internal Revenue. The primary question presented for decision in each case is whether the batteries and parts for batteries involved, upon the sales of which the challenged taxes were imposed, constitute parts for automobiles within the meaning of the taxing statutes. The findings cover the material facts pertinent to each of the three cases and they will be treated together in the opinion.

The applicable Treasury Regulations issued under the respective revenue acts are identical and provide that: "Definition of parts.—A 'part' for an automobile truck, automobile wagon, or other automobile chassis or body, or motorcycle, is any article designed or manufactured for the special purpose of being used as, or to improve, repair, or replace, a component part of any such vehicle, or article, and which by reason of some peculiar characteristic is not such a commercial commodity as would ordinarily be sold for general use, or which is primarily adapted only for use as a component part of such vehicle or article."

The Supreme Court, in Universal Battery Co. v. United States, 281 U. S. 580, 50 S. Ct. 422, 423, 74 L. Ed. 1051, approved this administrative definition of the term "parts" as used in sections 900 of the acts of 1918 and 1921. The court said: "This construction * * * has been adhered to in the Internal Revenue Bureau for about ten years, and it ought not to be disturbed now unless it be plainly wrong. We think it is not so, but is an admissible construction. Certainly it would be unreasonable to hold that articles equally adapted to a variety of uses and commonly put to such uses, one of which is use in motor vehicles, must be classified as parts or accessories for such vehicles. And it would be also unreasonable to hold that articles can be so classified only where they are adapted solely for use in motor vehicles and are exclusively so used. Magone v. Wiederer, 159 U. S. 555, 559, 16 S. Ct. 122, 40 L. Ed. 258. We think the view taken in the administrative regulations is reasonable and should be upheld. It is that articles primarily adapted for use in motor vehicles are to be regarded as parts or accessories of such vehicles, even though there has been some other use of the articles for which they are not so well adapted."

Measured by the tests laid down by the Supreme Court, it is clear the storage batteries involved are not parts for automobiles

within the meaning of the statutes. They were neither designed nor manufactured for the special purpose of being used as, or to replace, a component part of such vehicle, and they are not by reason of some peculiar characteristic such a commercial commodity as are not ordinarily sold for general use. The findings disclose that such batteries were in general use, and were sold and used for a large variety of purposes, before the advent of the automobile. The first storage batteries used in automobiles were in all essential respects the same as the batteries which had been commonly and widely used for many purposes before that time. While the use of storage batteries for starting and lighting automobiles greatly increased their sales, the essential character of the battery remained the same. The evidence clearly shows that the automobile manufacturer adjusted the space in the automobile to fit the storage battery, and that the storage battery was not designed specially for use on the automobile. The manufacturer in equipping the automobile with the storage battery merely utilized a commercial article long in existence and fully developed. Its adaptability and use for nonautomotive purposes remained as before and continued to increase with the growth and development of the country.

The findings show that the taxed batteries in these cases were sold and used for a great variety of purposes other than for use on automobiles, and that they were equally adapted to such uses. They were used in lighting homes; for operation of signals along the right of way of railroads; for operation of control gates in power plants, as at Niagara Falls; for operation of radio receiving sets and radio broadcasting sets; for operation of bells and signal systems, and buzzer systems in homes and offices; on internal-combustion engines on motorboats, airplanes, and stationary plants; in connection with the lighting and signal systems of airplanes; for operating wheel chairs, and lighting for fishing nets at sea; in connection with X-ray machines; for emergency theater lighting; in connection with fire alarms; and for other similar purposes. Sales for these various nonautomotive purposes were made in substantial quantities in the regular and ordinary course of business of plaintiff and its distributors.

The facts in the instant cases are parallel with the facts in General Lead Batteries Co. v. United States, 60 F.(2d) 177, 184, 75 Ct. Cl. 605. The taxed batteries in that case and the taxed batteries in these cases are of the same type, have the same historic background of development, function identically with each other, follow the same principle of construction, and were sold and used for substantially the same variety of purposes. Plaintiff's batteries, as were the batteries of the General Lead Batteries Company, were as well adapted to the nonautomotive uses for which substantial quantities were sold, as they were for use on automobiles. These cases therefore fall within the rule of the court's decision in the General Lead Batteries Case, and are controlled by it. In that case the court said: "The plaintiff's batteries were not designed or manufactured for the special purpose of being used as or to replace component parts of any vehicle named in the statutes; neither were they primarily adapted for such use. On the contrary, the evidence abundantly shows, and we have found, that they were adaptable to a great variety of uses other than on automobiles, and were commonly put to such uses. A purchaser of one of the batteries could, without making any change in it whatever, use it for any one of a great variety of purposes, for all of which it was equally adaptable. It cannot therefore be said it was primarily adapted for use in an automobile, automobile truck, or automobile wagon."

See, also, Atwater Kent Mfg. Co. v. United States, 62 Ct. Cl. 419; Milwaukee Motor Products, Inc., v. United States, 66 Ct. Cl. 295; W. M. Dutton & Sons v. United States, 59 F.(2d) 839, 75 Ct. Cl. 362; Anthony Company v. United States, 54 F.(2d) 165, 56 F.(2d) 481, 73 Ct. Cl. 758; C. F. Routzahn, Col., v. Willard Storage Battery Co., decided May 9, 1933, by C. C. A., sixth circuit, 65 F.(2d) 89, and McCaughn, Col., v. Electric Storage Battery Co., 63 F.(2d) 715, decided January 31, 1933, by C. C. A., Third Circuit.

The plaintiffs are entitled to recover. It is therefore ordered that judgment be entered for the plaintiffs in the sums of $169,292.98 in case No. F-247; $11,437.55 in case No. F-253; and $85,962.71 in case No. H-460; together with interest on the respective amounts, computed in accordance with the applicable provisions of law.

BOOTH, Chief Justice, did not hear this case on account of illness and took no part in its decision.