(C. D. 1245)

THE GLOLITE CORPORATION v. UNITED STATES

United States Customs Court, First Division

(Decided May 23, 1950)

*Wallace & Schwartz; Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

OLIVER, Chief Judge: The merchandise in the case at bar consists of certain pieces of wood imported from Canada. The pieces are of

various specific sizes and shapes manufactured according to specifications furnished by the importer. The involved items were classified for duty under paragraph 1513 of the Tariff Act of 1930 at 70 per centum ad valorem as "parts of toys" and are claimed dutiable at only 33⅓ per centum ad valorem under paragraph 412 of said act as manufactures of wood. The plaintiff contends that the articles in question are not dutiable as parts of toys because although used exclusively in the manufacture of toys they are equally adaptable for other uses. The Government's position is that the articles at bar have been so far manufactured that they are dedicated to the particular use as parts of toys.

The pertinent parts of the Tariff Act of 1930 are as follows:

PAR. 1513. * * * and all other toys, and parts of toys, not specially provided for, 70 per centum ad valorem. * * * The rates provided for in this paragraph shall apply to articles enumerated or described herein, whether or not more specifically provided for elsewhere in this Act.

PAR. 412. * * * manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for, 33⅓ per centum ad valorem.

The record consists of the testimony of one witness and samples of the various items imported (exhibits 1 to 23, inclusive, and illustrative exhibit 24). These exhibits are representative of the imported items except that illustrative exhibit 24 is painted, whereas this item, as imported, was unpainted (R. 14). One item, consisting of a wooden locomotive with a coal car attached, in one piece, representing an article manufactured from some of the imported pieces of wood, is before us (illustrative exhibit A); also six complete wooden cars, made from the imported pieces of wood (illustrative exhibits B to G, inclusive). The plaintiff introduced in evidence 12 other articles, not toys, such as a shoe brush, desk set, towel hanger, cigarette box, box cover, book end, a desk blotter, and ink well, and candle holders, which were specially designed and made up from the imported pieces of wood (illustrative exhibits H to N, inclusive, collective illustrative exhibit O, and illustrative exhibits P to S, inclusive).

Plaintiff's witness, chief purchasing agent of the domestic manufacturer, testified that his company was engaged in the manufacture of wooden toys (R. 4). He stated that the imported items were all used in making wooden toys. They were not used in the condition as imported but additional work was done on them after importation (R. 15). He described how the imported pieces of wood were used in the making of wooden toy train sets as follows:

The first step upon receipt of the material was to check them for finish, and if they were rough they had to go through sanding operations to give them a smooth finish. Then they were tried on jigs. If some of the dimensions were off, they had to correct it to make a complete assembly. Then they were partially assembled by nailing or gluing the various forms in which they were to be used, and then two edges were joined, and they were sanded again to make a smooth flush

surface. After that, the items were assembled except for the wheels. Then they were sent to the spray room where they were coated with different colors. They were then sent back to the factory and the wheels were put on. The wheels prior to that time were colored differently in order to make a contrasting finish. They were then decorated with decalcomanias or stencils to give them the final finished appearance * * *. (R. 15.)

Usually the samples in evidence are assembled to make one item or several were susceptible of being used on different items in the company's line of merchandise. Counsel for the plaintiff conceded that all the finished articles made from the imported pieces are toys in chief value of wood (R. 20). The witness stated that the imported pieces of wood are produced from lumber which is simply cut and sawn to length, holes are drilled through them, they are molded to the various shapes as imported, and they are not sanded. The witness testified that he had someone in the designing department of his firm experiment to see "what other uses they could be adopted for" (R. 26), and that the illustrative exhibits (H to S) are the articles so made. They were designed only to show how these imported articles could possibly be used. They were not actually so used nor were they ever sold or offered for sale commercially by his company.

On cross-examination, the witness testified that when he ordered the wooden pieces before us he specified them by item numbers and that they were made according to specifications of his company which sent blueprints, models, or samples to the manufacturer (R. 36).

These imported articles are not simply shaped pieces of wood. They are parts of a specific article, admittedly a toy. They have been cut and shaped to specification and specially manipulated and each piece has been designed to be used in connection with the other pieces to bring into being a toy. The fact that the importer chose to use the pieces of wood in making toys is pertinent to the issue before us. The decision of the importer to use these pieces of wood was not a mental operation decided upon after they were imported. The toy was first created in its finished, completed form. It was then broken down into its component parts. These parts were then reduced to descriptive drawings or blueprints, and specifications were prepared for use at the source of supply. The various pieces were then manufactured to these specifications and were cut, shaped, drilled, and otherwise prepared for assembly after importation into toy trains and cars. As to the claim that these wooden pieces were equally adaptable to other uses, this record shows conclusively that they were not. Here, we have specially designed units whose dimensions, shapes, and spaced drillings make them clearly designed to be used together to make a specific object, in this case a toy. They are exclusively so used. They are not designed for and have never been used to manufacture any other article or thing than the toys of which they are the component parts. They are the actual toys in "knocked-down" form, just as

clearly as though they had first been fitted together to form such toys and then dismantled for convenience of shipment. Our attention is directed to the decision of our appellate court in *United States* v. *Lyon & Healy*, 4 Ct. Cust. Appls. 438, T. D. 33873. This case involved certain violin and cello necks and ivory and wood mouthpieces for flutes and piccolos classified as "parts of musical instruments." The court held the violin and cello necks dutiable as parts of musical instruments but because of failure of proof in the record held the unfinished mouthpieces not to be dutiable as parts of musical instruments. The court further stated:

> The phrase "parts of musical instruments," as applied to merchandise of more or less definite construction, makes it dutiable according to use. If the merchandise is to be used in the make-up of musical instruments, becoming a part thereof, they are dutiable under this provision; otherwise not.

In *Magone* v. *Wiederer*, 159 U. S. 555, 40 L. ed. 258, the Supreme Court had before it the question of the dutiability of certain articles which consisted of pieces of glass, cut and manufactured to sizes suitable for clocks. The Court upheld the claim of the importer that the involved articles were dutiable as parts of clocks and affirmed the judgment of the lower court wherein the trial judge had charged the jury as follows:

> * * * And so I will say to you, as the law of the case, as I understand it, that if you find that these articles were chiefly used as parts of clocks, that would determine their tariff classification.

In *United States* v. *Lyon & Healy, supra*, the court quoted at some length from the opinion of the Supreme Court in *Magone* v. *Wiederer, supra*, and then stated:

> The Supreme Court in the last-mentioned case seems to have adopted the generally accepted rule that chief use in such cases may be shown either by the character of the article itself, as imported, wherein it is evidenced that it is intended and susceptible to but a single use, declared by the statute, or that it may be shown by proof that it is intended and serviceable substantially for the purpose alone declared by the statute within the terms of which it is claimed to be dutiable. That is to say, that it may be brought within the terms of the statute either by evidence manifested by the articles *per se* or given at the trial. That is the accepted doctrine and the one which has received the approval of this court.

The evidence in the case before us comes squarely within what the court above describes as "the accepted doctrine"; that is to say, that the wooden articles before us may be brought within the term "parts of toys" either by the evidence supplied by the articles themselves or the evidence given at the trial and included in the record. The articles before us and the evidence in the record establish conclusively that they are "intended and serviceable substantially for the purpose alone declared by the statute within the terms of which it is claimed to be dutiable," namely, the manufacture of toys.

Plaintiff has also directed our attention to a decision of the Board of General Appraisers reported as *In re Frank P. Dow Co. (Inc.)*, 38

Treas. Dec. 678, T. D. 38517, G. A. 8380, involving an item described as "Lundy Gas Savers," held not to be dutiable as parts of automobiles under paragraph 119 of the Tariff Act of 1913. The board said:

We therefore are of opinion that these Lundy gas savers are not dutiable under paragraph 119 for the reasons (1) that they are used for other purposes than as parts of automobiles * * *.

In the case before us these wooden pieces were *not* "used for other purposes than as parts of" toys.

This record establishes that certain toys are made up of various odd-shaped and odd-sized pieces of wood; that these various pieces of wood so shaped and manipulated were made up to specifications and shipped in bulk. After importation, further finishing operations were performed and they were finally assembled into the previously designed toy.

In *American Import Co.* v. *United States*, 26 C. C. P. A. (Customs) 72, T. D. 49612, the court said (p. 75):

* * * If the material has been so far processed from the "material" stage to a partly-completed article, then it loses its character as material and takes on the characteristics of the article for which the material was intended.

The fact that further work had to be done on the pieces of wood in question after importation does not affect their status as parts of the finished toys.

In *United States* v. *Riga*, 171 Fed. 783, the court said (p. 784), quoting from the opinion of the Board of General Appraisers:

* * * The fact that the barrels are not wholly finished we do not consider important, for otherwise an importer could change classification by merely omitting to put the final touch upon an article, thus rendering it impossible to assemble the parts in their imported state.

As the wooden pieces before us are to be used exclusively in the make-up of toys, becoming parts thereof, they are dutiable under the provision for parts of toys in paragraph 1513, Tariff Act of 1930, at 70 per centum ad valorem, as assessed. The protest is overruled. Judgment will issue accordingly.